**UNITED STATES DISTRICT COURT**
**FOR NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

FILED IN CLERK'S OFFICE
U.S.D.C. - Atlanta

SEP 1 2 2023

KEVIN P. WEIMER, Clerk
By: _____ Deputy Clerk

ANGELA WASHINGTON DEBOSE,

    Plaintiff,

vs.

    CASE NO. _____

PRIMERICA LIFE INSURANCE COMPANY,

    Defendant.

    **1 : 2 3 -CV- 4 1 0 2**

_____/

**COMPLAINT**

Plaintiff, ANGELA WASHINGTON, in her capacity as a beneficiary, Executor of the Estate of Patricia Ann Washington, and assignee of Joseph Washington, Jr., Cheryl Harris, Gilbert Washington, Michael Washington, and LaVonne Washington, sues Defendant, PRIMERICA LIFE INSURANCE COMPANY, and alleges as follows:

**GENERAL ALLEGATIONS**

1. That this is an action in excess of $150,000.00 exclusive of interest and costs, and within the jurisdiction of this Court.

2. That at all material times to this Complaint, Plaintiff, ANGELA WASHINGTON DEBOSE, was a citizen and resident of Hillsborough County, Florida.

3. At all times material, Defendant, PRIMERICA LIFE INSURANCE

COMPANY, was and is a corporation authorized and doing business Florida.

Defendant is and was a foreign company authorized to transact business in the State

of Florida. Defendant has sufficient minimum contacts with Florida, or otherwise

intentionally availed itself of the consumer markets within Florida to render the

exercise of jurisdiction by Florida courts permissible under traditional notions of fair

play and substantial justice. Defendant has it international headquarters in Duluth,

Georgia, Gwinnett County, and office locations in Tennessee, Mississippi, and New

York.

4. Decedent, Patricia Ann Washington, submitted an Application for Insurance to

Defendant for the purchase of a life insurance policy with a $100,000.00 face value

amount and designated to her parents, Joseph Washington and Bertha Washington,

as the primary beneficiaries of said insurance policy. Joseph Washington died in July

2007. Bertha Washington died in September 2011. The Plaintiff and her siblings,

including Patricia Ann Washington, were the beneficiaries of Joseph and Bertha

Washington's estates, (**Exhibit-1**). Patricia Ann Washington died on May 8, 2023.

The Plaintiff and her siblings are the heirs/beneficiaries of Patricia Ann

Washington's Estate, (**Exhibit-2**). The Plaintiff was/is the Personal Representative

of Joseph and Bertha Washington's Estate, (**Exhibit-3**), and the Executor of Patricia

Ann Washington's Estate, (**Exhibit-4**). The Assignment of Rights Agreements to

Beneficiary Angela DeBose is attached hereto, (**Exhibit-5**).  Said documents are in the possession of Defendant and will be produced through discovery.

5. Defendant issued an insurance policy insuring Patricia Ann Washington. Defendant has represented that (a) Joseph and Bertha Washington remained designated as the primary beneficiaries, even after their death; (b) Joseph Washington, whether the father or eldest brother of Patricia Ann Washington, was/is the primary beneficiary and has assigned all rights to the Plaintiff in her capacity as the Personal Representative/Executor of the estates at issue to file suit against Primerica for payment under the policy.  It is undisputed that Decedent Patricia Washington never married and had no children and that her heirs/siblings alive are the sole beneficiaries of said insurance policy. Said documents are in the possession of Defendant and will produced through discovery.

6. On 05/08/2023, Patricia Ann Washington passed away as a result of illness and other causes. Said documents are in the possession of Defendant and will produced through discovery.

7. Sometime thereafter, Angela Washington DeBose, Executor of the Estate, notified Defendant of Patricia Ann Washington's death and submitted the requisite claim forms. Said documents are in the possession of Defendant and will produced through discovery.

8. Instead of paying Plaintiff the proceeds of the life insurance policy, Defendant has refused to pay.

9. As a direct and proximate result of Defendant's breach of said insurance contract #0431226692, Claim No. 2023130007, Insured Term Insurance Rider, Disability Waiver of Premium Benefit Rider, (hereinafter "the Contract"), **(Exhibit-6)**, the Plaintiff/Beneficiary has suffered damages including loss of the death benefit payment due and has been required to file this action.

9. All conditions precedent to bringing this action including placing Defendant on written notice of the subject claim have been fully complied with by Plaintiff and/or have been waived or disputed by Defendant.

## JURISDICTION AND VENUE

10. This Court has original jurisdiction pursuant to 28 U.S.C. § 1332(a) as Plaintiff and Defendant are citizens of different states and the amount in controversy is greater than $75,000.

11. Venue is proper in the United States District Court for the Northern District of Georgia, Atlanta Division because a substantial portion of the events giving rise to this cause of action occurred in Duluth, Gwinnett County, Georgia, within the Atlanta Division of the United States District Court, Northern District of Georgia.

## COUNT I
## BREACH OF INSURANCE CONTRACT

12. Plaintiff readopts and realleges the allegations contained in paragraphs 1

through 9.

13. Defendant wrongfully refused to pay insurance proceeds to Plaintiff.

WHEREFORE, Plaintiff, Angela Washington DeBose, demands damages, benefits, costs, interest and fees pursuant to Fla. Stat. § 627.428 or applicable law.

## COUNT II
## ACTION FOR DECLARATORY RELIEF

14. Plaintiff readopts and realleges the allegations contained in paragraphs 1 through 9.

15. This is an action for Declaratory Relief pursuant to Fla. Stat. § 86.011, et. seq.

16. Defendant has refused to pay Plaintiff the benefits.

17. There is a bona fide dispute between the parties hereto and Plaintiff has and does raise justiciable issues as to the existence or non-existence of Plaintiff's rights, powers, obligations and legal relations with Defendant, by virtue of the contract, actions of Defendant, the exhibits attached, the Complaint and applicable statutes of Florida law or of this state.

18. Plaintiff is in doubt as to Plaintiff's rights, powers, obligations, and legal relations and there is an actual present need for a Declaratory Judgment as to the issues set forth herein.

WHEREFORE, Plaintiff, Angela Washington DeBose, demands a declaration of insurance coverage and further seeks costs, benefits, interest and fees pursuant to Fla. Stat. § 627.428 or applicable law.

## COUNT III
## ACTION FOR UNJUST ENRICHMENT

19. Plaintiff readopts and realleges the allegations contained in paragraphs 1 through 9.

20. The Decedent conferred a benefit on the Defendant on her behalf and her beneficiaries;

21. The Defendant has knowledge of the benefit of insurance premium payments from 1996 through the Decedent's development of becoming terminally ill in 2021;

22. The Defendant has accepted or retained the benefit; and,

23. The circumstances are such that it would be inequitable for the Defendant to retain the benefit without paying fair market value for it.

WHEREFORE, Plaintiff, Angela Washington DeBose, demands damages, benefits, costs, interest and fees pursuant to Fla. Stat. § 627.428 or applicable law.

## COUNT IV
## ACTION FOR RESTITUTION

24. Plaintiff readopts and realleges the allegations contained in paragraphs 1 through 9 and 19 through 23.

25. The Contract between Decedent and the Defendant is enforceable.

26. The Defendant's breach of the Contract is a material and/or a substantial breach so as to justify performance by the payment of the death claim to the Plaintiff, as Decedent's beneficiary.

27. The face value of the policy increased under the Increasing Benefit Rider on the Insured to its present value at or in excess of $150,000.00.

28. The injury done to the Plaintiff and the Estate of Patricia Ann Washington must be in the form of (a) complete performance through payment of the present value face amount; (b) part performance for which the Plaintiff and Defendant bargain, or (b) the full benefit which the Defendant has actually received plus interest.

WHEREFORE, Plaintiff, Angela Washington DeBose, demands restitution in the form of damages, benefits, costs, interest and fees pursuant to Fla. Stat. § 627.428 or applicable law.

## COUNT V
## ACTION FOR PROMISORY ESTOPPEL

29. Plaintiff readopts and realleges the allegations contained in paragraphs 1 through 9.

30. A legal relationship exists or was foreseeable between the beneficiaries under the Contract and Defendant.

31.  The legal Contract began when a promise(s) was made by the Defendant to the Decedent that her beneficiaries (i.e., the Plaintiff) under the policy would receive payment of the policy value upon her death; that her coverage would continue under the Disability Waiver of Premium Benefit Rider and not be lapsed when maturity was reached.

32.  Decedent Patricia Ann Washington and the Plaintiff depended on the promises made by Defendant.  The Defendant had knowledge of Plaintiff as a Third Party Beneficiary under the Contract, and that the Plaintiff stood to benefit from the contract's performance.

33.  The reliance of Decedent and the Plaintiff on the Defendant's promises were reasonable under the circumstances.

34.  Defendant broke or breached its promise to the Plaintiff's detriment.

35.  The Plaintiff sustained losses as a result, being denied any consolation from the Decedent's death.

WHEREFORE, Plaintiff, Angela Washington DeBose, demands detrimental reliance damages, benefits, costs, interest and fees pursuant to Fla. Stat. § 627.428 or applicable law, of not less than the original policy face amount of $100,000.00, which because of the Increasing Benefit rider now has a present value in excess of $150,000.00.

## COUNT VI
## ACTION FOR CONTSTRUCTIVE FRAUD (Breach of Fiduciary Duty)

36. Plaintiff readopts and realleges the allegations contained in paragraphs 1 through 9, 12-13, and 29-35.

37. A fiduciary duty will be found to arise where one party induces the reliance of the other party. A professional and fiduciary relationship exists whenever confidence on one side results in superiority and influence on the other side or when a special confidence is reposed in one who, in equity and good conscience, is bound to act in good faith.

38. An implied fiduciary relationship will lie when there is a degree of dependency on one side and an undertaking on the other side to protect and/or benefit the dependent party, including trust in one making a proposal or contract.

39. A fiduciary relationship existed between the Decedent and the Defendant and the Plaintiff. Defendant expressly invited the Decedent's and the Plaintiff's reliance by urging and reassuring that Primerica would look after the Decedent's and the Plaintiff's interests. The Decedent and the Plaintiff trusted and relied upon Defendant to keep its promises for valuable consideration under the Contract.

40. Defendant engaged in a course of conduct or self-dealing and greed to retain profits from the Decedent by failing to pay any proceeds pursuant to the death claim(s) filed by the Plaintiff.

41. Constructive fraud occurs when a fiduciary relationship has been abused or where an unconscionable advantage has been taken. Constructive fraud may be based on misrepresentation or taking an improper advantage at the expense of the dependent party.

42. Defendant's conduct was in direct contravention of the fiduciary duties owed the Decedent and the Plaintiff. Defendant took an improper advantage at the expense of the Plaintiff. Therefore, Defendant breached its fiduciary duties to the Decedent and the Plaintiff and committed constructive fraud.

WHEREFORE, Plaintiff, Angela Washington DeBose, respectfully requests damages against Defendant, costs of this action and such other and further relief as the Court deems just and proper.

## COUNT VII
## ACTION FOR UNCONSCIONABILITY

43. Plaintiff readopts and realleges the allegations contained in paragraphs 1-9 and 36 through 42.

44. Defendant's unfair terms to lapse the Contract for alleged nonpayment is unconscionable.

45. During all relevant times from June 18, 1996 to her terminal illness in 2021, Decedent Patricia Ann Washington maintained the Contract with Defendant.

46. The Insured's Term Insurance Riders were not set to expire until June 18, 2046. Defendant unconscionably expired the disability waiver earlier, the first year after the Decedent's retirement in 2016, without notice.

47. The Decedent had automatic payments during all relevant times. When the automatic payment failed in May of 2021 and the Defendant contacted the Decedent who was seriously ill at the time, the Decedent nevertheless made the payment so that her policy would continue after making 25 years of premium payments.

48. In June of 2021, the Defendant unconscionably lapsed the policy, knowing or having reason to know that the Decedent was terminally ill.

49. The Decedent's conduct and automatic termination of the disability waiver was substantively unconscionable and so outrageously unfair as to shock the conscience.

50. A substantively unconscionable contract is one that "no person in her senses and not under delusion would make on the one hand, and as no honest and fair person would accept on the other." *Woebse v. Health Care & Ret. Corp. of Am.*, 977 So. 2d 630 (Fla. 2d DCA 2008). See also *R.L. Kimsey Cotton Co. v. Ferguson*, 233 Ga. 962, 214 S.E.2d 360 (1975); *Stefan Jewelers, Inc. v. Electro-Protective Corp.*, 161 Ga. App. 385, 288 S.E.2d 667 (1982); and GA Code § 11-2-302 (2020).

51. Decedent Patricia Ann Washington contracted with Primerica under the Florida Retirement System ("FRS").

52. The Decedent had a reasonable expectation that her benefits under the Contract would be payable sometime after her retirement, old age, upon her death.

53. The Decedent retired in 2015; it is unconscionable that Primerica set up the Contract with the Decedent at age 40 and automatically expired it at age 60, though the disability waiver rider was paid through maturity and was expected to remain in effect.

54. The terms were procedurally and substantively unfair and oppressive.

WHEREFORE, Plaintiff, Angela Washington DeBose, respectfully requests damages against Defendant, costs of this action and such other and further relief as the Court deems just and proper.

## JURY TRIAL DEMAND

Plaintiff Angela Washington DeBose demands a trial by jury on all issues so triable as a matter of right.

Respectfully submitted this **29th** day of August, 2023.

/s/ Angela DeBose
Angela DeBose, Plaintiff
1107 W. Kirby Street
Tampa, FL 33604
813-932-6959
awdebose@aol.com

# EXHIBIT-1

IN THE CIRCUIT COURT FOR HILLSBOROUGH
COUNTY, FLORIDA

PROBATE DIVISION

IN RE: ESTATE OF

File No. 07-CP-2508-A

JOSEPH WASHINGTON,

Deceased.

## PETITION TO EXTEND TIME FOR FILING
## FINAL ACCOUNTING & PETITION FOR DISCHARGE

Petitioner, ANGELA W. DEBOSE, alleges:

1.      The petitioner is the Personal Representative of the above estate.

2.      The status of the administration of this estate is the Estate is party to Hillsborough
Civil Case No. 29-2009-CA-019349A001-HC.  A copy of the Civil Case Summary is attached.

3.      The petitioner cannot file a Final Accounting and Petition for Discharge within
the time specified in Florida Probate Rule 5.400 because Hillsborough Civil Case No. 29-2009-
CA-019349A001-HC has not been settled and is pending a trial.

4.      The petitioner estimates that it will be possible to file a Final Accounting and a
Petition for Discharge on or before February 28, 2016.

5.      The only persons, other than Petitioner, having an interest in this proceeding and
their respective addresses are:

| Name | Address |
|---|---|
| JOSEPH WASHINGTON, JR. | 28833 Lindenhurst Drive<br>Zephyrhills, FL 33544 |
| PATRICIA WASHINGTON | 1909 West LaSalle Street<br>Tampa, Florida 33607 |
| CHERYL HARRIS | 5205 South 79th Street<br>Tampa, FL 33619 |
| GILBERT WASHINGTON | 5205 South 79th Street<br>Tampa, FL 33619 |
| MICHAEL WASHINGTON | 6210 East 113th Avenue<br>Temple Terrace, FL 33617 |
| ANGELA W. DEBOSE | 1107 West Kirby Drive<br>Tampa, FL 33604 |
| LAVONNE WASHINGTON | 5205 South 79th Street<br>Tampa, FL 33619 |

LASHAWN WASHINGTON                    5205 South 79th Street
                                     Tampa, FL  33619

　　　Petitioner requests that an order be entered extending the time for filing the Final
Accounting and Petition for Discharge until January 31, 2016.

　　　Under penalties of perjury, I declare that I have read the foregoing, and the facts alleged
are true, to the best of my knowledge and belief.

　　　Signed on February  27  , 2015.

                                     Angela W. DeBose
                                     ANGELA W. DEBOSE, Petitioner

_____

N. Michael Kouskoutis, Esq.
Attorney for Petitioner
Florida Bar No. 883591
N. Michael Kouskoutis, P.A.
623 East Tarpon Avenue

# EXHIBIT-2

## Affidavit of Next of Kin

I / We the undersigned, being first duly sworn, do depose and say:

1. That I / We are the next of kin of Patricia A Washington _____ (deceased)
   who died on the __8th__ day of ____May____, 2023.

2. That no personal representative has been appointed for the decedent's estate in this state or elsewhere and no application for such an appointment is pending in this state or elsewhere.

3. That there are no outstanding debts or liens against the decedent:

4. That this affidavit is made in support of our request for payment of the benefits due from policy #
   27 0002768203 _____ which insures the life of ___Patricia Ann Washington___
   to __Ray Williams__ funeral home.                              (Deceased Name)

5. Now therefore, in consideration of payment of said sums as requested, the undersigned, his / her heirs, executors, administrators or assigns, do hereby agree to save harmless said Lincoln Heritage Life Insurance Company from any and all loss, cost, damage, or expense occasioned by said payments and do hereby agree to reimburse the repay to Lincoln Heritage Life Insurance Company any and all sums it may later be required to pay to, or on account of, any other claimant or claimants to said proceeds.

| Signature | Relationship | Date |
|---|---|---|
| Joseph Washington, Jr. | Brother | 5/15/23 |
| Cheryl Washington Harris | Sister | 5/15/23 |
| Gilbert Washington | Brother | 5/15/2023 |
| Michael Washington | Brother | 5/15/2023 |
| Angela Washington DeBose | Sister | 5/15/2023 |
| LaVonne Washington | Sister | 5/15/23 |
|  |  |  |

*****************************************************************************

## This Section to be Completed by Notary Public Only

Subscribed and Sworn before me the _15th_ day of _May_, 20_23_

Notary Public: _Kim Bushe-Whiteman_

My commission expires:

KIM BUSHE-WHITEMAN
Commission # HH 244727
Expires June 27, 2026

Next of Kin

# EXHIBIT-3

IN THE CIRCUIT COURT FOR HILLSBOROUGH
COUNTY, FLORIDA

                                   **PROBATE DIVISION**

IN RE: ESTATE OF

                            **File No. 07-CP-2508**

JOSEPH WASHINGTON,

        Deceased.

## ORDER OF DISCHARGE
(single personal representative)

On the Petition for Discharge of ANGELA DEBOSE, personal representative of the estate of JOSEPH WASHINGTON, deceased, the Court finding that the estate has been fully administered and properly distributed, that claims of creditors have been paid or otherwise disposed of, that the tax imposed by Chapter 198 of the Florida Statutes, if any, has been paid, and that the personal representative should be discharged, it therefore is

ADJUDGED that the personal representative is discharged, and the surety on the personal representative's bond, if any, is released from further liability.

ORDERED on _____February 17_____, 2016.

                                Electronically Conformed 2/17/2016
                                Circuit Judge

IN THE CIRCUIT COURT FOR HILLSBOROUGH
COUNTY, FLORIDA
PROBATE DIVISION

IN RE: ESTATE OF

File No. 11-2599

BERTHA B. WASHINGTON,

Deceased.

LETTERS OF ADMINISTRATION
(single personal representative)

TO ALL WHOM IT MAY CONCERN:

WHEREAS, BERTHA B. WASHINGTON, a resident of Hillsborough County, Florida,
died on September 21, 2011, owning assets in the State of Florida, and

WHEREAS, ANGELA W. DEBOSE has been appointed Personal Representative of the
estate of the decedent and has performed all acts prerequisite to issuance of Letters of
Administration in the estate,

NOW, THEREFORE, I, the undersigned Circuit Judge, declare ANGELA W. DEBOSE
duly qualified under the laws of the State of Florida to act as Personal Representative of the
estate of BERTHA B. WASHINGTON, deceased, with full power to administer the estate
according to law; to ask, demand, sue for, recover and receive the property of the decedent; to
pay the debts of the decedent as far as the assets of the estate will permit and the law directs; and
to make distribution of the estate according to law.

Ordered on _December 20_, 2011.

_____
Circuit Judge

STATE OF FLORIDA
COUNTY OF HILLSBOROUGH

THIS IS TO CERTIFY THAT THE FOREGOING
IS A TRUE AND CORRECT COPY OF THE
DOCUMENT ON FILE IN MY OFFICE AND
THE SAME IS IN FULL FORCE AND EFFECT
THIS 22 DAY OF DEC 20 11

PAT FRANK
CLERK OF THE CIRCUIT COURT

BY _____ D.C.
AS DEPUTY CLERK

# EXHIBIT-4

**IN THE CIRCUIT/COUNTY COURT OF THE THIRTEENTH JUDICIAL CIRCUIT, IN AND FOR HILLSBOROUGH COUNTY, FLORIDA**

23-WD-001094

DOD: 05/08/2023

**THE WILL CONSISTS OF (6 PAGES)**
**DISTRIBUTION LIST (3 PAGES)**

## OFFICIAL RECEIPT FOR LAST WILL AND TESTAMENT

Received this 12th day of June, 2023, the purported Last Will and Testament and Distribution List of PATRICIA ANN WASHINGTON dated this 2nd day of May, 2023 and witnessed by FRANK DEBOSE AND ANDREA SHELTON; in accordance with Section 732.901, Florida Statutes.

Deposited by:

ANGELA W DEBOSE
1107 W KIRBY ST
TAMPA, FL 33604

CINDY STUART
CLERK OF THE CIRCUIT COURT

By: 23-WD-001094, 6/12/2023 1:34 PM

Deputy Clerk, Lilian Ayala
23-WD-001094, 6/12/2023 1:34 PM

Revised 05/10/22                                                         Page 1 of 1
Filed 6/12/2023 1:34:42 PM  Hillsborough County Clerk of the Circuit Court

# EXHIBIT-5

## ASSIGNMENT AGREEMENT

ASSIGNMENT AGREEMENT, dated as of August **23rd**, 2023, between **JOSEPH WASHINGTON, JR. (JWJ)**, a sibling and beneficiary of the Estate of Patricia Ann Washington whose will is filed and governed under the laws of the State of Florida, having his principal place of residence at 28833 Lindenhurst Drive, Zephyrhills, FL 33544; **ANGELA WASHINGTON DEBOSE (AWD)**, a sibling, beneficiary, and the Executor of the Estate of Patricia Ann Washington, having her principal place of residence at 1107 W. Kirby St., Tampa, FL 33604.

WHEREAS, JWJ and AWD are beneficiaries of Life Insurance Policy #0431226692, Claim No. 2023130007, Insured Term Insurance Rider, Disability Waiver of Premium Benefit Rider, (hereinafter "the Contract") made and entered into as of April 30, 1996 between decedent PATRICIA ANN WASHINGTON and PRIMERICA LIFE INSURANCE COMPANY; Patricia Ann Washington died on May 8, 2023, with Joseph Washington as her beneficiary.

WHEREAS JWJ wishes to assign, transfer, and convey his rights and delegate its obligations under the Contract to AWD to succeed to the rights and assume the obligations of JWJ under the contract to sue PRIMERICA LIFE INSURANCE COMPANY; and

WHEREAS, JWJ is willing to consent to the assignment of my legal rights and the delegation of obligations under the Contract to AWD and the succession to the legal rights and assumption of the obligations under the contract to serve as a substitute party on my behalf in filing suit against PRIMERICA LIFE INSURANCE COMPANY.

NOW, THEREFORE, in consideration of the mutual agreements contained in this Agreement, the parties agree as follows:

**Section 1.1** Assignment. JWJ does hereby assign, transfer, and convey and deliver unconditionally to AWD, effective as of August 23, 2023 (the "Effective Date"), all of JWJ's right, title and interest, powers, duties, responsibilities, privileges and remedies of JWJ under the Contract. JWJ hereby authorizes AWD, in the name, place and stead of JWJ, to take all action necessary or desirable to enforce the rights assigned hereunder. AWD shall give all notices, make all filings and take such other action to perfect and preserve rights acquired hereby.

**Section 1.2** Assumption. JWJ hereby delegates and AWD hereby assumes all duties, liabilities and obligations and shall render all performance of JWJ under the Contract as of and from and after the Effective Date. For the avoidance of doubt, JWJ shall have no liability or obligation whatsoever with respect to any duties, liabilities, or obligations of AWD with respect to the Contract existing or arising out of circumstances occurring prior to the Effective Date.

**Section 1.3** Consent to Assignment. AWD hereby consents to the assignment of JWJ's rights and the delegation of JWJ's obligations under the Contract and the succession to the rights and assumption of the obligations of JWJ under the Contract by AWD, effective as of the Effective Date.

In addition, AWD hereby releases JWJ from any obligations of JWJ arising and to be performed under the Contract on or after the Effective Date. JWJ agrees not to make any claim against AWD with respect to any obligations of AWD arising and to be performed under the Contract on or after the Effective Date. JWJ agrees that AWD has no liability with respect to any obligations arising or to be performed under the Contract prior to the Effective Date. JWJ further agrees that AWD shall have all rights of JWJ with respect to JWJ' obligations, duties, and performance under the Contract.

**Section 1.4** Representations and Warranties. Each party represents and warrants with respect to itself that:

(a) This Agreement has been duly authorized, executed and delivered and constitutes its legal, valid, and binding obligation, enforceable against it in accordance with the terms of this Agreement.

(b) It is duly incorporated, validly existing and in good standing under the laws of its jurisdiction of incorporation or organization. It has all requisite power and authority to execute and deliver this Agreement and to perform its obligations under this Agreement; and

(c) The execution and delivery of this Agreement, the consummation of the transactions contemplated hereby, and the performance of its obligations hereunder (x) do not and will not conflict with, or result in a violation of or default under, its constitutive documents, and (y) do not and will not conflict with in a material manner, or result in a material violation of or material

default under, any other governing instrument applicable to it, or any agreement or other instrument to which it is a party or by which it or any of its properties or assets are bound, or any permit, franchise, judgment, decree, injunction, statute, order, law, rule or regulation applicable to it or its businesses, properties or assets.

**Section 1.5** Further Assurances. Each party agrees to execute and deliver any and all such other documents and instruments and take or cause to be taken any and all such other actions as any other party may reasonably request (at the cost of the requesting party) or that are reasonably necessary or appropriate in order to give full effect to the terms of this Agreement.

**Section 1.6** Headings. The Section headings in this Agreement are for convenience only and shall not affect the construction of this Agreement.

**Section 1.7** Amendments/Waivers. This Agreement may be amended, modified, supplemented or be subject to a waiver only by an agreement in writing signed by each party.

**Section 1.8** Counterparts. This Agreement may be executed in any number of counterparts, each such counterpart being deemed to be an original instrument, and all such counterparts shall together constitute the same agreement.

**Section 1.9** Governing Law. This Agreement shall be governed by and construed in accordance with the laws of the State of Florida.

**Section 1.10** Notices. All communications and notices hereunder shall be in writing and, except as otherwise provided, shall be delivered, mailed, cabled or telexed to the following addresses:

    If to JWJ:        28833 Lindenhurst Drive; Zephyrhills, FL  33544

    If to AWD:      1107 W. Kirby St., Tampa, FL 33604

     **Section 1.11** Successors and Assigns.

This Agreement shall be binding upon and inure to the benefit of the parties hereto and their respective successors and assigns. No party to this Agreement may assign or delegate any

of its rights or obligations under this Agreement without the prior written consent of each of the other parties, and any purported assignment without such consent shall be void.

### Section 1.12 Entire Agreement, Etc.

This Agreement constitutes the entire agreement between the parties and supersedes all other agreements, understandings, representations, and warranties, whether written or oral, among the parties with respect to the subject matter of this Agreement.

### Section 1.13 Separability.

If any provision of this Agreement is declared or held invalid, illegal or unenforceable, in whole or in part, whether generally or in any particular jurisdiction, such provision shall be deemed amended to the extent, but only to the extent, necessary to cure such invalidity, illegality or unenforceability, and the validity, legality and enforceability of the remaining provisions of this Agreement, both generally and in every other jurisdiction, shall not in any way be affected or impaired thereby.

### Section 1.14 No Third-Party Beneficiaries.

Nothing in this Agreement, express or implied, shall give to any person, other than the parties to this Agreement and their successors and assigns under this Agreement, any benefit or any legal or equitable right, remedy or claim under this Agreement.

ASSIGNOR JOSEPH WASHINGTON, JR.

Date Signed: _____8/23/2023_____

By: _____

Name: _____

Address: 28833 Lindenhurst Drive

Zephyrhills, FL  33544

ASSIGNEE: ANGELA WASHINGTON DEBOSE

Date Signed: _____8/23/2023_____

By: _____Angela W. DeBose_____

Name: _____Angela W. DeBose_____

Address: 1107 W. Kirby Street

Tampa, FL 33604

## ASSIGNMENT AGREEMENT

ASSIGNMENT AGREEMENT, dated as of August **23rd**, 2023, between **CHERYL HARRIS (CH)**, a sibling and beneficiary of the Estate of Patricia Ann Washington whose will is filed and governed under the laws of the State of Florida, having her principal place of residence at 1909 W. La Salle Street, Tampa, FL 33607; **ANGELA WASHINGTON DEBOSE (AWD)**, a sibling, beneficiary, and the Executor of the Estate of Patricia Ann Washington, having her principal place of residence at 1107 W. Kirby St., Tampa, FL 33604.

WHEREAS, CH and AWD are beneficiaries of Life Insurance Policy #0431226692, Claim No. 2023130007, Insured Term Insurance Rider, Disability Waiver of Premium Benefit Rider, (hereinafter "the Contract") made and entered into as of April 30, 1996 between decedent PATRICIA ANN WASHINGTON and PRIMERICA LIFE INSURANCE COMPANY; Patricia Ann Washington died on May 8, 2023, with Joseph Washington as her beneficiary.

WHEREAS, CH wishes to assign, transfer and convey her rights and delegate its obligations under the Contract to AWD to succeed to the rights and assume the obligations of CH under the contract to sue PRIMERICA LIFE INSURANCE COMPANY; and

WHEREAS, CH is willing to consent to the assignment of my legal rights and the delegation of obligations under the Contract to AWD and the succession to the legal rights and assumption of the obligations under the contract to serve as a substitute party on my behalf in filing suit against PRIMERICA LIFE INSURANCE COMPANY .

NOW, THEREFORE, in consideration of the mutual agreements contained in this Agreement, the parties agree as follows:

Section 1.1 Assignment. CH does hereby assign, transfer, and convey and deliver unconditionally to AWD, effective as of August 23, 2023 (the "Effective Date"), all of CH's right, title and interest, powers, duties, responsibilities, privileges and remedies of CH under the Contract. CH hereby authorizes AWD, in the name, place and stead of CH, to take all action necessary or desirable to enforce the rights assigned hereunder. AWD shall give all notices, make all filings and take such other action to perfect and preserve rights acquired hereby.

Section 1.2 Assumption. CH hereby delegates and AWD hereby assumes all duties, liabilities and obligations and shall render all performance of CH under the Contract as of and from and after the Effective Date. For the avoidance of doubt, CH shall have no liability or obligation whatsoever with respect to any duties, liabilities or obligations of AWD with respect to the Contract existing or arising out of circumstances occurring prior to the Effective Date.

Section 1.3 Consent to Assignment. AWD hereby consents to the assignment of CH's rights and the delegation of CH's obligations under the Contract and the succession to the rights and assumption of the obligations of CH under the Contract by AWD, effective as of the Effective Date.

In addition, AWD hereby releases CH from any obligations of CH arising and to be performed under the Contract on or after the Effective Date. CH agrees not to make any claim against AWD with respect to any obligations of AWD arising and to be performed under the Contract on or after the Effective Date. CH agrees that AWD has no liability with respect to any obligations arising or to be performed under the Contract prior to the Effective Date. CH further agrees that AWD shall have all rights of CH with respect to CH' obligations, duties and performance under the Contract.

Section 1.4 Representations and Warranties. Each party represents and warrants with respect to itself that:

(a) This Agreement has been duly authorized, executed and delivered and constitutes its legal, valid and binding obligation, enforceable against it in accordance with the terms of this Agreement;

(b) It is duly incorporated, validly existing and in good standing under the laws of its jurisdiction of incorporation or organization. It has all requisite power and authority to execute and deliver this Agreement and to perform its obligations under this Agreement; and

(c) The execution and delivery of this Agreement, the consummation of the transactions contemplated hereby, and the performance of its obligations hereunder (x) do not and will not conflict with, or result in a violation of or default under, its constitutive documents, and (y) do not and will not conflict with in a material manner, or result in a material violation of or material default under, any other governing instrument applicable to it, or any agreement or other

instrument to which it is a party or by which it or any of its properties or assets are bound, or any permit, franchise, judgment, decree, injunction, statute, order, law, rule or regulation applicable to it or its businesses, properties or assets.

Section 1.5 Further Assurances. Each party agrees to execute and deliver any and all such other documents and instruments and take or cause to be taken any and all such other actions as any other party may reasonably request (at the cost of the requesting party) or that are reasonably necessary or appropriate in order to give full effect to the terms of this Agreement.

Section 1.6 Headings. The Section headings in this Agreement are for convenience only and shall not affect the construction of this Agreement.

Section 1.7 Amendments/Waivers. This Agreement may be amended, modified, supplemented or be subject to a waiver only by an agreement in writing signed by each party.

Section 1.8 Counterparts. This Agreement may be executed in any number of counterparts, each such counterpart being deemed to be an original instrument, and all such counterparts shall together constitute the same agreement.

Section 1.9 Governing Law. This Agreement shall be governed by and construed in accordance with the laws of the State of Florida.

Section 1.10 Notices. All communications and notices hereunder shall be in writing and, except as otherwise provided, shall be delivered, mailed, cabled or telexed to the following addresses:

If to CH:        1909 W. La Salle Street; Tampa, FL  33607

If to AWD:       1107 W. Kirby St., Tampa, FL 33604

Section 1.11 Successors and Assigns.

This Agreement shall be binding upon and inure to the benefit of the parties hereto and their respective successors and assigns. No party to this Agreement may assign or delegate any

of its rights or obligations under this Agreement without the prior written consent of each of the other parties, and any purported assignment without such consent shall be void.

### Section 1.12 Entire Agreement, Etc.

This Agreement constitutes the entire agreement between the parties and supersedes all other agreements, understandings, representations and warranties, whether written or oral, among the parties with respect to the subject matter of this Agreement.

### Section 1.13 Separability.

If any provision of this Agreement is declared or held invalid, illegal or unenforceable, in whole or in part, whether generally or in any particular jurisdiction, such provision shall be deemed amended to the extent, but only to the extent, necessary to cure such invalidity, illegality or unenforceability, and the validity, legality and enforceability of the remaining provisions of this Agreement, both generally and in every other jurisdiction, shall not in any way be affected or impaired thereby.

### Section 1.14 No Third-Party Beneficiaries.

Nothing in this Agreement, express or implied, shall give to any person, other than the parties to this Agreement and their successors and assigns under this Agreement, any benefit or any legal or equitable right, remedy or claim under this Agreement.

ASSIGNOR CHERYL HARRIS

Date Signed: 8/23 2023

By: _____

Name: Cheryl Harris

**Address: 1909 W. La Salle Street**

**Tampa, FL  33607**

ASSIGNEE: ANGELA WASHINGTON DEBOSE

Date Signed: 8/23/2023

By: Angela M. DeBose

Name: Angela W. DeBose

**Address: 1107 W. Kirby Street**

**Tampa, FL 33604**

## ASSIGNMENT AGREEMENT

ASSIGNMENT AGREEMENT, dated as of August **23rd**, 2023, between **GILBERT WASHINGTON (GW)**, a sibling and beneficiary of the Estate of Patricia Ann Washington whose will is filed and governed under the laws of the State of Florida, having his principal place of residence at 5205 79th Street S., Tampa, FL 33619; **ANGELA WASHINGTON DEBOSE (AWD)**, a sibling, beneficiary, and the Executor of the Estate of Patricia Ann Washington, having her principal place of residence at 1107 W. Kirby St., Tampa, FL 33604.

WHEREAS, GW and AWD are beneficiaries of Life Insurance Policy #0431226692, Claim No. 2023130007, Insured Term Insurance Rider, Disability Waiver of Premium Benefit Rider, (hereinafter "the Contract") made and entered into as of April 30, 1996 between decedent PATRICIA ANN WASHINGTON and PRIMERICA LIFE INSURANCE COMPANY; Patricia Ann Washington died on May 8, 2023, with Joseph Washington as her beneficiary.

WHEREAS, GW wishes to assign, transfer and convey his rights and delegate its obligations under the Contract to AWD to succeed to the rights and assume the obligations of GW under the contract to sue PRIMERICA LIFE INSURANCE COMPANY; and

WHEREAS, GW is willing to consent to the assignment of my legal rights and the delegation of obligations under the Contract to AWD and the succession to the legal rights and assumption of the obligations under the contract to serve as a substitute party on my behalf in filing suit against PRIMERICA LIFE INSURANCE COMPANY .

NOW, THEREFORE, in consideration of the mutual agreements contained in this Agreement, the parties agree as follows:

Section 1.1 Assignment. GW does hereby assign, transfer, and convey and deliver unconditionally to AWD, effective as of August 23, 2023 (the "Effective Date"), all of GW's right, title and interest, powers, duties, responsibilities, privileges and remedies of GW under the Contract. GW hereby authorizes AWD, in the name, place and stead of GW, to take all action necessary or desirable to enforce the rights assigned hereunder. AWD shall give all notices, make all filings and take such other action to perfect and preserve rights acquired hereby.

Section 1.2 Assumption. GW hereby delegates and AWD hereby assumes all duties, liabilities and obligations and shall render all performance of GW under the Contract as of and from and after the Effective Date. For the avoidance of doubt, GW shall have no liability or obligation whatsoever with respect to any duties, liabilities or obligations of AWD with respect to the Contract existing or arising out of circumstances occurring prior to the Effective Date.

Section 1.3 Consent to Assignment. AWD hereby consents to the assignment of GW's rights and the delegation of GW's obligations under the Contract and the succession to the rights and assumption of the obligations of GW under the Contract by AWD, effective as of the Effective Date.

In addition, AWD hereby releases GW from any obligations of GW arising and to be performed under the Contract on or after the Effective Date. GW agrees not to make any claim against AWD with respect to any obligations of AWD arising and to be performed under the Contract on or after the Effective Date. GW agrees that AWD has no liability with respect to any obligations arising or to be performed under the Contract prior to the Effective Date. GW further agrees that AWD shall have all rights of GW with respect to GW' obligations, duties and performance under the Contract.

Section 1.4 Representations and Warranties. Each party represents and warrants with respect to itself that:

(a) This Agreement has been duly authorized, executed and delivered and constitutes its legal, valid and binding obligation, enforceable against it in accordance with the terms of this Agreement;

(b) It is duly incorporated, validly existing and in good standing under the laws of its jurisdiction of incorporation or organization. It has all requisite power and authority to execute and deliver this Agreement and to perform its obligations under this Agreement; and

(c) The execution and delivery of this Agreement, the consummation of the transactions contemplated hereby, and the performance of its obligations hereunder (x) do not and will not conflict with, or result in a violation of or default under, its constitutive documents, and (y) do not and will not conflict with in a material manner, or result in a material violation of or material

default under, any other governing instrument applicable to it, or any agreement or other instrument to which it is a party or by which it or any of its properties or assets are bound, or any permit, franchise, judgment, decree, injunction, statute, order, law, rule or regulation applicable to it or its businesses, properties or assets.

Section 1.5 Further Assurances. Each party agrees to execute and deliver any and all such other documents and instruments and take or cause to be taken any and all such other actions as any other party may reasonably request (at the cost of the requesting party) or that are reasonably necessary or appropriate in order to give full effect to the terms of this Agreement.

Section 1.6 Headings. The Section headings in this Agreement are for convenience only and shall not affect the construction of this Agreement.

Section 1.7 Amendments/Waivers. This Agreement may be amended, modified, supplemented or be subject to a waiver only by an agreement in writing signed by each party.

Section 1.8 Counterparts. This Agreement may be executed in any number of counterparts, each such counterpart being deemed to be an original instrument, and all such counterparts shall together constitute the same agreement.

Section 1.9 Governing Law. This Agreement shall be governed by and construed in accordance with the laws of the State of Florida.

Section 1.10 Notices. All communications and notices hereunder shall be in writing and, except as otherwise provided, shall be delivered, mailed, cabled or telexed to the following addresses:

If to GW:       5205 79th Street S.; Tampa, FL  33619

If to AWD:      1107 W. Kirby St., Tampa, FL 33604

**Section 1.11** Successors and Assigns.

This Agreement shall be binding upon and inure to the benefit of the parties hereto and their respective successors and assigns. No party to this Agreement may assign or delegate any

of its rights or obligations under this Agreement without the prior written consent of each of the other parties, and any purported assignment without such consent shall be void.

Section 1.12 Entire Agreement, Etc.

This Agreement constitutes the entire agreement between the parties and supersedes all other agreements, understandings, representations and warranties, whether written or oral, among the parties with respect to the subject matter of this Agreement.

Section 1.13 Separability.

If any provision of this Agreement is declared or held invalid, illegal or unenforceable, in whole or in part, whether generally or in any particular jurisdiction, such provision shall be deemed amended to the extent, but only to the extent, necessary to cure such invalidity, illegality or unenforceability, and the validity, legality and enforceability of the remaining provisions of this Agreement, both generally and in every other jurisdiction, shall not in any way be affected or impaired thereby.

Section 1.14 No Third-Party Beneficiaries.

Nothing in this Agreement, express or implied, shall give to any person, other than the parties to this Agreement and their successors and assigns under this Agreement, any benefit or any legal or equitable right, remedy or claim under this Agreement.

**ASSIGNOR GILBERT WASHINGTON**

Date Signed: 8/23/2023

By: Gilbert Washington

Name: Gilbert Washington

**Address: 5205 79th Street S.**

**Tampa, FL  33619**

**ASSIGNEE: ANGELA WASHINGTON DEBOSE**

Date Signed: 8/23/2023

By: Angela M DeBose

Name: Angela W. DeBose

**Address: 1107 W. Kirby Street**

**Tampa, FL 33604**

## ASSIGNMENT AGREEMENT

ASSIGNMENT AGREEMENT, dated as of August **23rd**, 2023, between **MICHAEL WASHINGTON (MW)**, a sibling and beneficiary of the Estate of Patricia Ann Washington whose will is filed and governed under the laws of the State of Florida, having his principal place of residence at 6210 East 113th Avenue, Temple Terrace, FL 33617; **ANGELA WASHINGTON DEBOSE (AWD)**, a sibling, beneficiary, and the Executor of the Estate of Patricia Ann Washington, having her principal place of residence at 1107 W. Kirby St., Tampa, FL 33604.

WHEREAS, MW and AWD are beneficiaries of Life Insurance Policy #0431226692, Claim No. 2023130007, Insured Term Insurance Rider, Disability Waiver of Premium Benefit Rider, (hereinafter "the Contract") made and entered into as of April 30, 1996 between decedent PATRICIA ANN WASHINGTON and PRIMERICA LIFE INSURANCE COMPANY; Patricia Ann Washington died on May 8, 2023, with Joseph Washington as her beneficiary.

WHEREAS, MW wishes to assign, transfer and convey his rights and delegate its obligations under the Contract to AWD to succeed to the rights and assume the obligations of MW under the contract to sue PRIMERICA LIFE INSURANCE COMPANY; and

WHEREAS, MW is willing to consent to the assignment of my legal rights and the delegation of obligations under the Contract to AWD and the succession to the legal rights and assumption of the obligations under the contract to serve as a substitute party on my behalf in filing suit against PRIMERICA LIFE INSURANCE COMPANY .

NOW, THEREFORE, in consideration of the mutual agreements contained in this Agreement, the parties agree as follows:

Section 1.1 Assignment. MW does hereby assign, transfer, and convey and deliver unconditionally to AWD, effective as of August 23, 2023 (the "Effective Date"), all of MW's right, title and interest, powers, duties, responsibilities, privileges and remedies of MW under the Contract. MW hereby authorizes AWD, in the name, place and stead of MW, to take all action necessary or desirable to enforce the rights assigned hereunder. AWD shall give all notices, make all filings and take such other action to perfect and preserve rights acquired hereby.

Section 1.2 Assumption. MW hereby delegates and AWD hereby assumes all duties, liabilities and obligations and shall render all performance of MW under the Contract as of and from and after the Effective Date. For the avoidance of doubt, MW shall have no liability or obligation whatsoever with respect to any duties, liabilities or obligations of AWD with respect to the Contract existing or arising out of circumstances occurring prior to the Effective Date.

Section 1.3 Consent to Assignment. AWD hereby consents to the assignment of MW's rights and the delegation of MW's obligations under the Contract and the succession to the rights and assumption of the obligations of MW under the Contract by AWD, effective as of the Effective Date.

In addition, AWD hereby releases MW from any obligations of MW arising and to be performed under the Contract on or after the Effective Date. MW agrees not to make any claim against AWD with respect to any obligations of AWD arising and to be performed under the Contract on or after the Effective Date. MW agrees that AWD has no liability with respect to any obligations arising or to be performed under the Contract prior to the Effective Date. MW further agrees that AWD shall have all rights of MW with respect to MW' obligations, duties and performance under the Contract.

Section 1.4 Representations and Warranties. Each party represents and warrants with respect to itself that:

(a) This Agreement has been duly authorized, executed and delivered and constitutes its legal, valid and binding obligation, enforceable against it in accordance with the terms of this Agreement;

(b) It is duly incorporated, validly existing and in good standing under the laws of its jurisdiction of incorporation or organization. It has all requisite power and authority to execute and deliver this Agreement and to perform its obligations under this Agreement; and

(c) The execution and delivery of this Agreement, the consummation of the transactions contemplated hereby, and the performance of its obligations hereunder (x) do not and will not conflict with, or result in a violation of or default under, its constitutive documents, and (y) do not and will not conflict with in a material manner, or result in a material violation of or material

default under, any other governing instrument applicable to it, or any agreement or other instrument to which it is a party or by which it or any of its properties or assets are bound, or any permit, franchise, judgment, decree, injunction, statute, order, law, rule or regulation applicable to it or its businesses, properties or assets.

Section 1.5 Further Assurances. Each party agrees to execute and deliver any and all such other documents and instruments and take or cause to be taken any and all such other actions as any other party may reasonably request (at the cost of the requesting party) or that are reasonably necessary or appropriate in order to give full effect to the terms of this Agreement.

Section 1.6 Headings. The Section headings in this Agreement are for convenience only and shall not affect the construction of this Agreement.

Section 1.7 Amendments/Waivers. This Agreement may be amended, modified, supplemented or be subject to a waiver only by an agreement in writing signed by each party.

Section 1.8 Counterparts. This Agreement may be executed in any number of counterparts, each such counterpart being deemed to be an original instrument, and all such counterparts shall together constitute the same agreement.

Section 1.9 Governing Law. This Agreement shall be governed by and construed in accordance with the laws of the State of Florida.

Section 1.10 Notices. All communications and notices hereunder shall be in writing and, except as otherwise provided, shall be delivered, mailed, cabled or telexed to the following addresses:

If to MW:        6210 East 113th Avenue; Temple Terrace, FL  33617

If to AWD:       1107 W. Kirby St., Tampa, FL 33604

Section 1.11 Successors and Assigns.

This Agreement shall be binding upon and inure to the benefit of the parties hereto and their respective successors and assigns. No party to this Agreement may assign or delegate any

of its rights or obligations under this Agreement without the prior written consent of each of the other parties, and any purported assignment without such consent shall be void.

### Section 1.12 Entire Agreement, Etc.

This Agreement constitutes the entire agreement between the parties and supersedes all other agreements, understandings, representations and warranties, whether written or oral, among the parties with respect to the subject matter of this Agreement.

### Section 1.13 Separability.

If any provision of this Agreement is declared or held invalid, illegal or unenforceable, in whole or in part, whether generally or in any particular jurisdiction, such provision shall be deemed amended to the extent, but only to the extent, necessary to cure such invalidity, illegality or unenforceability, and the validity, legality and enforceability of the remaining provisions of this Agreement, both generally and in every other jurisdiction, shall not in any way be affected or impaired thereby.

### Section 1.14 No Third-Party Beneficiaries.

Nothing in this Agreement, express or implied, shall give to any person, other than the parties to this Agreement and their successors and assigns under this Agreement, any benefit or any legal or equitable right, remedy or claim under this Agreement.

ASSIGNOR MICHAEL WASHINGTON

Date Signed: 8/23/2023

By: Michael Wash

Name: Michael Washington

Address: 6210 East 113th Avenue

Temple Terrace, FL 33617

ASSIGNEE: ANGELA WASHINGTON DEBOSE

Date Signed: 8/23/2023

By: Angela W. DeBose

Name: Angela W. DeBose

Address: 1107 W. Kirby Street

Tampa, FL 33604

# ASSIGNMENT AGREEMENT

ASSIGNMENT AGREEMENT, dated as of August **23rd**, 2023, between **LAVONNE WASHINGTON (LW)**, a sibling and beneficiary of the Estate of Patricia Ann Washington whose will is filed and governed under the laws of the State of Florida, having her principal place of residence at 5205 79th Street S., Tampa, FL 33619; **ANGELA WASHINGTON DEBOSE (AWD)**, a sibling, beneficiary, and the Executor of the Estate of Patricia Ann Washington, having her principal place of residence at 1107 W. Kirby St., Tampa, FL 33604.

WHEREAS, LW and AWD are beneficiaries of Life Insurance Policy #0431226692, Claim No. 2023130007, Insured Term Insurance Rider, Disability Waiver of Premium Benefit Rider, (hereinafter "the Contract") made and entered into as of April 30, 1996 between decedent PATRICIA ANN WASHINGTON and PRIMERICA LIFE INSURANCE COMPANY; Patricia Ann Washington died on May 8, 2023, with Joseph Washington as her beneficiary.

WHEREAS, LW wishes to assign, transfer and convey her rights and delegate its obligations under the Contract to AWD to succeed to the rights and assume the obligations of LW under the contract to sue PRIMERICA LIFE INSURANCE COMPANY; and

WHEREAS, LW is willing to consent to the assignment of my legal rights and the delegation of obligations under the Contract to AWD and the succession to the legal rights and assumption of the obligations under the contract to serve as a substitute party on my behalf in filing suit against PRIMERICA LIFE INSURANCE COMPANY .

NOW, THEREFORE, in consideration of the mutual agreements contained in this Agreement, the parties agree as follows:

Section 1.1 Assignment. LW does hereby assign, transfer, and convey and deliver unconditionally to AWD, effective as of August 23, 2023 (the "Effective Date"), all of LW's right, title and interest, powers, duties, responsibilities, privileges and remedies of LW under the Contract. LW hereby authorizes AWD, in the name, place and stead of LW, to take all action necessary or desirable to enforce the rights assigned hereunder. AWD shall give all notices, make all filings and take such other action to perfect and preserve rights acquired hereby.

Section 1.2 Assumption. LW hereby delegates and AWD hereby assumes all duties, liabilities and obligations and shall render all performance of LW under the Contract as of and from and after the Effective Date. For the avoidance of doubt, LW shall have no liability or obligation whatsoever with respect to any duties, liabilities or obligations of AWD with respect to the Contract existing or arising out of circumstances occurring prior to the Effective Date.

Section 1.3 Consent to Assignment. AWD hereby consents to the assignment of LW's rights and the delegation of LW's obligations under the Contract and the succession to the rights and assumption of the obligations of LW under the Contract by AWD, effective as of the Effective Date.

In addition, AWD hereby releases LW from any obligations of LW arising and to be performed under the Contract on or after the Effective Date. LW agrees not to make any claim against AWD with respect to any obligations of AWD arising and to be performed under the Contract on or after the Effective Date. LW agrees that AWD has no liability with respect to any obligations arising or to be performed under the Contract prior to the Effective Date. LW further agrees that AWD shall have all rights of LW with respect to LW' obligations, duties and performance under the Contract.

Section 1.4 Representations and Warranties. Each party represents and warrants with respect to itself that:

(a) This Agreement has been duly authorized, executed and delivered and constitutes its legal, valid and binding obligation, enforceable against it in accordance with the terms of this Agreement;

(b) It is duly incorporated, validly existing and in good standing under the laws of its jurisdiction of incorporation or organization. It has all requisite power and authority to execute and deliver this Agreement and to perform its obligations under this Agreement; and

(c) The execution and delivery of this Agreement, the consummation of the transactions contemplated hereby, and the performance of its obligations hereunder (x) do not and will not conflict with, or result in a violation of or default under, its constitutive documents, and (y) do not and will not conflict with in a material manner, or result in a material violation of or material default under, any other governing instrument applicable to it, or any agreement or other

instrument to which it is a party or by which it or any of its properties or assets are bound, or any permit, franchise, judgment, decree, injunction, statute, order, law, rule or regulation applicable to it or its businesses, properties or assets.

Section 1.5 Further Assurances. Each party agrees to execute and deliver any and all such other documents and instruments and take or cause to be taken any and all such other actions as any other party may reasonably request (at the cost of the requesting party) or that are reasonably necessary or appropriate in order to give full effect to the terms of this Agreement.

Section 1.6 Headings. The Section headings in this Agreement are for convenience only and shall not affect the construction of this Agreement.

Section 1.7 Amendments/Waivers. This Agreement may be amended, modified, supplemented or be subject to a waiver only by an agreement in writing signed by each party.

Section 1.8 Counterparts. This Agreement may be executed in any number of counterparts, each such counterpart being deemed to be an original instrument, and all such counterparts shall together constitute the same agreement.

Section 1.9 Governing Law. This Agreement shall be governed by and construed in accordance with the laws of the State of Florida.

Section 1.10 Notices. All communications and notices hereunder shall be in writing and, except as otherwise provided, shall be delivered, mailed, cabled or telexed to the following addresses:

     If to LW:     5205 79th Street S.; Tampa, FL  33619

     If to AWD:     1107 W. Kirby St., Tampa, FL 33604

     **Section 1.11** <u>Successors and Assigns</u>.

This Agreement shall be binding upon and inure to the benefit of the parties hereto and their respective successors and assigns. No party to this Agreement may assign or delegate any

of its rights or obligations under this Agreement without the prior written consent of each of the other parties, and any purported assignment without such consent shall be void.

Section 1.12 Entire Agreement, Etc.

This Agreement constitutes the entire agreement between the parties and supersedes all other agreements, understandings, representations and warranties, whether written or oral, among the parties with respect to the subject matter of this Agreement.

Section 1.13 Separability.

If any provision of this Agreement is declared or held invalid, illegal or unenforceable, in whole or in part, whether generally or in any particular jurisdiction, such provision shall be deemed amended to the extent, but only to the extent, necessary to cure such invalidity, illegality or unenforceability, and the validity, legality and enforceability of the remaining provisions of this Agreement, both generally and in every other jurisdiction, shall not in any way be affected or impaired thereby.

Section 1.14 No Third-Party Beneficiaries.

Nothing in this Agreement, express or implied, shall give to any person, other than the parties to this Agreement and their successors and assigns under this Agreement, any benefit or any legal or equitable right, remedy or claim under this Agreement.

ASSIGNOR LAVONNE WASHINGTON

Date Signed: _8/23/23_

By: _LaVonne Washyton_

Name: _LaVonne Washington_

Address: 5205 79th Street S.

Tampa, FL  33619

ASSIGNEE: ANGELA WASHINGTON DEBOSE

Date Signed: _8/23/2023_

By: _Angela M. DeBose_

Name: _Angela W. DeBose_

Address: 1107 W. Kirby Street

Tampa, FL 33604

# EXHIBIT-6



**PRIMERICA**
**Life Insurance Company**

Executive Offices:
3120 Breckinridge Boulevard
Duluth, Georgia 30199-0001

For Policyowner Service
call 1-800-257-4725

We will pay the Face Amount, in a lump sum, to the Beneficiary upon receiving due proof that the Insured died before the Expiry Date and while this Policy was in force. This agreement is subject to the provisions on the following pages, which constitute the Policy.

**RIGHT TO RETURN POLICY:** You may return this Policy to Us for any reason within 20 days after You receive it. If returned, it will be considered void from the beginning. Any premium paid will be refunded.

This Policy is effective at 12:01 A.M. on the Date of Issue.

Signed on the Date of Issue at Our Executive Offices.

*Brad L. Baxter*

Secretary

*Richard Williams*

President

### MODIFIED PREMIUM TERM LIFE INSURANCE

### EXCHANGEABLE AFTER FIVE YEARS TO ANNUAL RENEWABLE LEVEL OR DECREASING TERM INSURANCE TO AGE 100

### PREMIUMS ARE SUBJECT TO CHANGE

### NONPARTICIPATING

**Primerica Life Insurance Company**
(A Stock Company)
Home Office:  Boston, Massachusetts

**PL-M25 FL REV**

**10.95**

## TABLE OF CONTENTS

PART 1:   DEFINITIONS .................................................................................. Page  4

PART 2:   GENERAL PROVISIONS ................................................................. Page  4

PART 3:   BENEFICIARY PROVISIONS .......................................................... Page  5

PART 4:   PREMIUM PROVISIONS .................................................................. Page  5

PART 5:   EXCHANGE PROVISIONS .............................................................. Page  6

PART 6:   SETTLEMENT OPTIONS ................................................................. Page  7

POLICY SPECIFICATIONS

| | | | |
|---|---|---|---|
| POLICY NUMBER: | 0431226692 | INSURED: | PATRICIA A WASHINGTON |
| ISSUE AGE: | 40 | DATE OF ISSUE: | JUNE 17, 1996 |
| INITIAL FACE AMOUNT: | $5,000 | POLICY DATE: | JUNE 18, 1996 |
| PREMIUM CLASS: | STANDARD/ NON-TOBACCO USE | EXPIRY DATE: | JUNE 18, 2046 |

| FORM NUMBER | PLAN NAME | INITIAL FACE AMOUNT | SCHEDULED ANNUAL PREMIUMS* | |
|---|---|---|---|---|
| | | | YEAR 1 | YEARS 2-5 |
| PL-M25FLRV | MODIFIED PREMIUM TERM LIFE INS | $5,000 | $109.35 | $80.50 |
| PL-125FL | INSURED TERM INSURANCE RIDER | 95,000 | 359.10 | 359.10 |
| PL-204FL | INCREASING BENEFIT RIDER ON INSURED | | 0.00 | SEE RIDER |
| PL-WPA | WAIVER OF PREMIUM | | 22.00 | SEE RIDER |

*The Scheduled Annual Premiums shown above are guaranteed for the years for which premium amounts are shown. The premiums for the premium payment option You chose are shown on Page 3A and explained in Part 4, Premium Provisions.

TOTAL PREMIUM PAYMENT OPTIONS (includes all riders):

| | ANNUAL | SEMI-ANNUAL | QUARTERLY | MONTHLY |
|---|---|---|---|---|
| FIRST YEAR | $490.45 | $255.06 | $130.00 | $46.61 |
| SECOND YEAR | $479.75 | $249.49 | $127.17 | $45.60 |

PL-M25FLRV                    Policy Page 3                    10.95

**(THIS PAGE INTENTIONALLY LEFT BLANK)**

## TABLE A
### MONTHLY PREMIUMS FOR BASIC POLICY CONTINUATION TO EXPIRY DATE

| POLICY YEARS | ATTAINED AGE | SCHEDULED MONTHLY PREMIUMS* | MAXIMUM MONTHLY PREMIUMS | FACE AMOUNT |
|---|---|---|---|---|
| 01 | 40 | $10.39 | $10.39 | $5,000.00 |
| 02 | 41 | $7.65 | $7.65 | $5,000.00 |
| 03 | 42 | $7.65 | $7.65 | $5,000.00 |
| 04 | 43 | $7.65 | $7.65 | $5,000.00 |
| 05 | 44 | $7.65 | $7.65 | $5,000.00 |
| 06 | 45 | $7.65 | $9.64 | $5,000.00 |
| 07 | 46 | $7.65 | $9.64 | $5,000.00 |
| 08 | 47 | $7.65 | $9.64 | $5,000.00 |
| 09 | 48 | $7.65 | $9.64 | $5,000.00 |
| 10 | 49 | $7.65 | $9.64 | $5,000.00 |
| 11 | 50 | $7.65 | $9.64 | $5,000.00 |
| 12 | 51 | $7.65 | $9.64 | $5,000.00 |
| 13 | 52 | $7.65 | $9.64 | $5,000.00 |
| 14 | 53 | $7.65 | $9.64 | $5,000.00 |
| 15 | 54 | $7.65 | $9.64 | $5,000.00 |
| 16 | 55 | $7.65 | $9.64 | $5,000.00 |
| 17 | 56 | $7.65 | $9.64 | $5,000.00 |
| 18 | 57 | $7.65 | $9.64 | $5,000.00 |
| 19 | 58 | $7.65 | $9.64 | $5,000.00 |
| 20 | 59 | $7.65 | $9.64 | $5,000.00 |
| 21 | 60 | $7.65 | $9.64 | $5,000.00 |
| 22 | 61 | $7.65 | $9.64 | $5,000.00 |
| 23 | 62 | $7.65 | $9.64 | $5,000.00 |
| 24 | 63 | $7.65 | $9.64 | $5,000.00 |
| 25 | 64 | $7.65 | $9.64 | $5,000.00 |
| 26 | 65 | $14.91 | $16.87 | $5,000.00 |
| 27 | 66 | $15.61 | $17.72 | $5,000.00 |
| 28 | 67 | $16.40 | $18.70 | $5,000.00 |
| 29 | 68 | $17.30 | $19.80 | $5,000.00 |
| 30 | 69 | $17.77 | $21.08 | $5,000.00 |
| 31 | 70 | $18.83 | $22.63 | $5,000.00 |
| 32 | 71 | $19.98 | $24.66 | $5,000.00 |
| 33 | 72 | $20.61 | $26.40 | $5,000.00 |
| 34 | 73 | $21.53 | $28.71 | $5,000.00 |
| 35 | 74 | $23.07 | $31.32 | $5,000.00 |

*Scheduled premiums may change, but they will not increase beyond the maximum premiums.  See Part 4, Premium Provisions.

## POLICY SPECIFICATIONS (CONT'D)

### TABLE A (CONT'D)
### MONTHLY PREMIUMS FOR BASIC POLICY CONTINUATION TO EXPIRY DATE

| POLICY YEARS | ATTAINED AGE | SCHEDULED MONTHLY PREMIUMS* | MAXIMUM MONTHLY PREMIUMS | FACE AMOUNT |
|---|---|---|---|---|
| 36 | 75 | $24.79 | $34.11 | $5,000.00 |
| 37 | 76 | $26.69 | $37.08 | $5,000.00 |
| 38 | 77 | $28.75 | $40.21 | $5,000.00 |
| 39 | 78 | $30.99 | $43.45 | $5,000.00 |
| 40 | 79 | $33.41 | $46.90 | $5,000.00 |
| 41 | 80 | $36.01 | $50.67 | $5,000.00 |
| 42 | 81 | $38.73 | $54.88 | $5,000.00 |
| 43 | 82 | $41.68 | $59.63 | $5,000.00 |
| 44 | 83 | $46.14 | $64.98 | $5,000.00 |
| 45 | 84 | $51.76 | $70.83 | $5,000.00 |
| 46 | 85 | $55.69 | $77.05 | $5,000.00 |
| 47 | 86 | $59.29 | $83.51 | $5,000.00 |
| 48 | 87 | $65.22 | $90.15 | $5,000.00 |
| 49 | 88 | $72.95 | $96.85 | $5,000.00 |
| 50 | 89 | $78.80 | $103.69 | $5,000.00 |

*Scheduled premiums may change, but they will not increase beyond the maximum premiums. See Part 4, Premium Provisions.

# PART 1
## DEFINITIONS

These are some key words used in this Policy.

1. *YOU or YOUR* - The Owner of the Policy. Unless You tell Us otherwise, the Owner is the Insured.

2. *WE, OUR or US* - Primerica Life Insurance Company.

3. *INSURED* - The person whose life the Policy insures.

4. *NOTICE TO US* - Information We have received which is written, signed by You, and acceptable to Us.

5. *BENEFICIARY* - The person(s) to whom the Policy proceeds are payable at the death of the Insured. This is the person(s) named in the application as the Beneficiary, unless later changed (see Part 3).

6. *FACE AMOUNT* - The amount for each Policy year which is shown in Table A on Page 3A.

7. *DATE OF ISSUE* - The date (shown on Page 3) on which We issue the Policy to You. This date controls the Incontestability and Suicide Exclusion Provisions in Part 2.

8. *POLICY DATE* - The date (shown on Page 3) from which premium due dates, policy anniversaries, policy years and policy months are measured.

9. *ISSUE AGE* - The Insured's age on the birthday nearest the Policy Date.

10. *ATTAINED AGE* - The Issue Age plus the number of policy years since the Policy Date.

11. *EXPIRY DATE* - The date shown on the Policy Specifications. This Policy is not in force on or after this date.

# PART 2
## GENERAL PROVISIONS

*OWNER OF POLICY* - This Policy belongs to You. During the Insured's life, You have all of the rights described in this Policy. If You die, Your rights will pass to the contingent owner, if any. If there is no contingent owner, Your rights will pass to the Insured.

*THE CONTRACT* - This Policy is issued in consideration of the application and payment of the first premium. A copy of the application, including any supplemental applications, is attached and is a part of the Policy. Together, they are the entire contract. All statements in the application, except fraudulent ones, are deemed to be representations and not warranties. No statement will void this Policy or be used in defense of a claim unless: (1) it is contained in the written application; and (2) a copy of that application is attached to this Policy.

*WAIVER OR MODIFICATION* - Any change to this Policy must be in writing and signed by Our President or Secretary. No agent or any other person can change this Policy or waive any of its provisions on Our behalf.

*INCONTESTABILITY* - We will not contest this Policy after it has been in force for two years during the Insured's life. The two years begin on the Date of Issue. This provision does not apply to any rider for disability benefits or additional insurance specifically for accidental death.

If insurance coverage to be replaced, as shown in the application, has terminated: (a) prior to the Insured's death; and (b) between 60 days before and 60 days after the Date of Issue of this Policy, We will not contest the amount of the replaced coverage that would not have been contestable had it not been replaced. If it is not possible to terminate any coverage to be replaced because of its provisions within 60 days after the Date of Issue of this Policy, such 60-day period will be extended to the earliest possible date for the coverage to be terminated under its provisions.

*MISSTATEMENT OF AGE* - If the age of the Insured has been misstated in the application, We will be liable only for the amount of insurance the premiums paid would have purchased for the correct age.

*SUICIDE EXCLUSION* - If the Insured dies by suicide, while sane or insane, within two years of the Date of Issue, We are only liable for the premiums paid.

If insurance coverage to be replaced, as shown in the application, has terminated: (a) prior to the Insured's death by suicide; and (b) between 60 days before and 60 days after the Date of Issue of this Policy, We will not contest the amount of the replaced coverage that would not have been contestable had it not been replaced. If it is not possible to terminate any coverage to be replaced because of its provisions within 60 days after the Date of Issue of this Policy, such 60-day period will be extended to the earliest possible date for the coverage to be terminated under its provisions.

*NONPARTICIPATION* - This Policy does not participate in Our profits or surplus.

*ASSIGNMENT* - You may assign Your rights under this Policy. You must give Notice to Us of the assignment. We are not responsible for the validity of any assignment. The interest of any Beneficiary not designated irrevocably will be subject to the rights of any assignee.

*PAYMENT OF PROCEEDS* - Due proof of the death of the Insured must be sent to Us at Our Executive Offices. We must receive a certified death certificate, completed claim forms and a valid authorization for Us to obtain all medical and other records concerning the Insured. Death proceeds equal: (1) the Face Amount of this Policy as shown in Table A on Page 3A; plus (2) any rider benefits; and minus (3) any overdue premium if death occurs during a grace period. Any interest payable on death proceeds will be paid according to applicable state law.

*CANCELLATION* - You may cancel Your Policy at any time by sending written Notice to Us. Your Policy will be canceled as of the date We receive the Notice, or, if stated in Your Notice, as of a later date.

If this Policy is canceled before the Expiry Date and premiums have been paid in advance, We will refund any unearned portion of the premiums paid beyond the end of the policy month in which cancellation occurred.

## PART 3
## BENEFICIARY PROVISIONS

*BENEFICIARY* - The Beneficiary's interest will end if the Beneficiary dies before the Insured. If no primary Beneficiary is living at the Insured's death, the death proceeds will be paid to any contingent Beneficiary. The proceeds will be paid to the Owner if the Insured dies and there is no primary or contingent Beneficiary. Proceeds will be paid to the Insured's estate if there is no living Beneficiary or Owner.

We may rely on a sworn statement by any responsible person to discover the identity or nonexistence of any Beneficiary not identified by name. If a Beneficiary is a partnership, We will pay the proceeds to the partnership as it is constituted at the time of the Insured's death.

*CHANGE OF BENEFICIARY* - You can change a Beneficiary by Notice to Us. You can only change a Beneficiary while the Insured is alive. A Beneficiary designated irrevocably on Our records may not be changed except with the written consent of that Beneficiary. A Beneficiary change will take effect on the date You signed the Notice to Us. If the Insured died before We receive this Notice, the change is effective, subject to any prior payment of proceeds.

## PART 4
## PREMIUM PROVISIONS

*PREMIUM PAYMENTS* - Premiums are payable to Us in advance. The first premium is due on or before delivery of this Policy and may be paid to Us through one of Our agents. Subsequent premiums must be paid to Us at Our Executive Offices and are due at 12, 6, 3 or 1 Policy month intervals, depending on the premium payment option You chose in the application. The premiums shown on Page 3A are for the premium payment option You chose. Subject to Our approval, You may change the premium payment option for future premium payments upon Notice to Us. We will provide You with premium rates for other payment options upon written request. Premiums are not due after the Insured's death or the Expiry Date.

If a part of the premium is no longer payable under the provisions of a Rider, the total premiums will be reduced accordingly.

*PREMIUM CHANGES BY COMPANY* - Premiums for this Policy will be the scheduled premiums shown on Pages 3 and 3A, unless changed by Us. We reserve the right to change the scheduled premiums. We will not change them more often than once a year, and in no event will the scheduled premiums be greater than the maximum premiums shown on Page 3A. Any such change will apply uniformly to all policies of this form issued in the same calendar year to Insureds having the same Issue Age, Premium Class and state of residence. We will not change the classification or premium for this Policy due to a deterioration in your health. Details of all changes in premium will be on file with the Florida Insurance Department.

We will mail written notice to You at least 60 days prior to the date on which a change in the scheduled premiums will become effective. We will send You new policy specifications pages to reflect any changes in scheduled premiums.

*OTHER PREMIUM CHANGES* - Changes You make to the Face Amount of this Policy or the face amount of any Riders may also change Your scheduled premiums.

*REFUND OF UNEARNED PREMIUM AT DEATH* - If the Insured dies while this Policy is in force, the proceeds payable to the Beneficiary shall include a refund of the unearned portion of the premiums paid beyond the end of the policy month in which death occurred.

GRACE PERIOD - This Policy has a 31 day grace period. This means that except for the first premium, if a premium is not paid on or before the date it is due, it may be paid during the next 31 days. No interest will be charged for this late payment. During this 31 day period, the Policy will stay in force. If You do not pay the premium by the end of the grace period, this Policy will automatically terminate.

REINSTATEMENT - If this Policy terminates due to unpaid premiums, it may be reinstated within three years after the date the first unpaid premium was due, if prior to the Expiry Date. To be reinstated We must have each of the following: (1) evidence of insurability satisfactory to Us for all persons to be covered; (2) payment of all unpaid premiums; and (3) payment of interest on all unpaid premiums to the date of reinstatement. Interest will be at 6% per year compounded annually. The reinstated date is the date We approve the reinstatement application.

## PART 5
## EXCHANGE PROVISIONS

EXCHANGE AT ATTAINED AGE - You may exchange this Policy at any time after it has been in force for five years to the annual renewable level term insurance to age 100 plan described below; or the decreasing term insurance to age 100 plan described below; or any other plan of insurance then available for exchange for this Policy. We will not require evidence of insurability. The new plan will take effect on the exchange date and this Policy will terminate. However, the new plan's Incontestability and Suicide Exclusion Provisions will be controlled by the Date of Issue of this Policy. We will issue either revised policy specifications pages or a new policy.

The following conditions are necessary for exchange: (1) We receive Notice to Us requesting an exchange; (2) the face amount of the new plan is not less than the minimum required by Us nor greater than the Face Amount in effect under this Policy on the exchange date; (3) the required premium is paid within 31 days after the exchange date; (4) the Insured is alive; and (5) this Policy is in force on the exchange date.

ANNUAL RENEWABLE LEVEL TERM INSURANCE TO AGE 100 PLAN - For this plan, the face amount remains level while premiums increase each year with Attained Age. Annual premiums per $1,000 face amount for this plan are shown below in Table B. We reserve the right to change the scheduled premiums shown in Table B. We will not change the premiums to more than the maximum premiums shown in Table B.

## TABLE B
### ANNUAL EXCHANGE PREMIUMS PER $1,000 FACE AMOUNT

| AGE | PREFERRED AND NON-TOBACCO USE | | TOBACCO USE | | AGE | PREFERRED AND NON-TOBACCO USE | | TOBACCO USE | |
|---|---|---|---|---|---|---|---|---|---|
| | SCHEDULED | MAXIMUM | SCHEDULED | MAXIMUM | | SCHEDULED | MAXIMUM | SCHEDULED | MAXIMUM |
| 23 | $1.36 | $1.67 | $2.12 | $2.54 | 63 | $15.70 | $18.84 | $26.56 | $32.58 |
| 24 | 1.36 | 1.67 | 2.21 | 2.65 | 64 | 17.01 | 20.62 | 28.96 | 35.68 |
| 25 | 1.36 | 1.67 | 2.30 | 2.76 | 65 | 18.38 | 22.51 | 31.29 | 39.01 |
| 26 | 1.36 | 1.68 | 2.39 | 2.87 | 66 | 19.85 | 24.30 | 33.15 | 42.54 |
| 27 | 1.36 | 1.68 | 2.48 | 2.98 | 67 | 21.52 | 26.35 | 34.92 | 46.24 |
| 28 | 1.36 | 1.68 | 2.58 | 3.10 | 68 | 23.41 | 28.67 | 36.89 | 50.04 |
| 29 | 1.36 | 1.68 | 2.69 | 3.23 | 69 | 24.40 | 31.38 | 40.21 | 54.09 |
| 30 | 1.36 | 1.68 | 2.80 | 3.36 | 70 | 26.63 | 34.63 | 43.89 | 58.57 |
| 31 | 1.37 | 1.68 | 2.91 | 3.49 | 71 | 29.06 | 38.91 | 47.87 | 65.08 |
| 32 | 1.41 | 1.69 | 3.02 | 3.62 | 72 | 30.98 | 42.56 | 52.42 | 72.54 |
| 33 | 1.45 | 1.74 | 3.15 | 3.78 | 73 | 32.32 | 47.44 | 57.58 | 81.04 |
| 34 | 1.49 | 1.79 | 3.27 | 3.92 | 74 | 35.57 | 52.92 | 63.35 | 90.48 |
| 35 | 1.53 | 1.84 | 3.40 | 4.08 | 75 | 39.19 | 58.80 | 69.73 | 101.08 |
| 36 | 1.58 | 1.90 | 3.54 | 4.25 | 76 | 43.18 | 65.06 | 76.77 | 112.32 |
| 37 | 1.64 | 1.97 | 3.68 | 4.42 | 77 | 47.52 | 71.64 | 84.44 | 124.06 |
| 38 | 1.64 | 2.00 | 3.83 | 4.60 | 78 | 52.24 | 78.47 | 92.75 | 136.15 |
| 39 | 1.72 | 2.14 | 4.06 | 4.87 | 79 | 57.33 | 85.72 | 101.73 | 148.88 |
| 40 | 1.81 | 2.29 | 4.30 | 5.16 | 80 | 62.81 | 93.67 | 111.38 | 162.71 |
| 41 | 1.90 | 2.47 | 4.56 | 5.47 | 81 | 68.53 | 102.52 | 121.45 | 177.94 |
| 42 | 1.99 | 2.65 | 4.83 | 5.80 | 82 | 74.73 | 112.52 | 132.34 | 194.99 |
| 43 | 2.09 | 2.86 | 5.12 | 6.14 | 83 | 84.12 | 123.79 | 144.08 | 214.46 |
| 44 | 2.26 | 3.07 | 5.54 | 6.65 | 84 | 94.95 | 136.11 | 156.65 | 236.06 |
| 45 | 2.45 | 3.32 | 6.02 | 7.22 | 85 | 104.24 | 149.20 | 170.09 | 259.36 |
| 46 | 2.65 | 3.59 | 6.51 | 7.81 | 86 | 111.82 | 162.80 | 182.35 | 281.32 |
| 47 | 2.86 | 3.88 | 7.03 | 8.44 | 87 | 124.29 | 176.79 | 196.51 | 306.62 |
| 48 | 3.10 | 4.19 | 7.34 | 8.81 | 88 | 140.57 | 190.89 | 212.60 | 335.43 |
| 49 | 3.40 | 4.54 | 8.05 | 9.66 | 89 | 152.88 | 205.29 | 231.08 | 368.55 |
| 50 | 3.73 | 4.91 | 8.84 | 10.61 | 90 | 161.71 | 216.47 | 238.31 | 383.20 |
| 51 | 4.05 | 5.35 | 9.24 | 11.09 | 91 | 168.54 | 232.99 | 247.21 | 386.46 |
| 52 | 4.45 | 5.86 | 10.14 | 12.17 | 92 | 175.68 | 250.75 | 256.49 | 389.51 |
| 53 | 4.90 | 6.43 | 11.18 | 13.42 | 93 | 185.13 | 270.47 | 269.04 | 396.55 |
| 54 | 5.43 | 7.09 | 12.38 | 14.86 | 94 | 197.52 | 295.28 | 285.85 | 408.53 |
| 55 | 6.02 | 7.82 | 13.73 | 16.48 | 95 | 216.09 | 330.34 | 311.17 | 430.82 |
| 56 | 6.69 | 8.63 | 15.25 | 18.30 | 96 | 248.87 | 385.69 | 356.75 | 477.99 |
| 57 | 7.42 | 9.49 | 16.28 | 19.54 | 97 | 298.66 | 482.20 | 426.17 | 551.96 |
| 58 | 8.66 | 10.42 | 17.32 | 20.78 | 98 | 370.49 | 661.13 | 526.28 | 697.58 |
| 59 | 9.57 | 11.48 | 18.82 | 22.58 | 99 | 476.55 | 961.54 | 673.86 | 961.54 |
| 60 | 11.08 | 13.30 | 20.40 | 24.48 | | | | | |
| 61 | 12.71 | 15.25 | 22.18 | 26.88 | NOTE: | ADD ANNUAL POLICY FEE OF $60. | | | |
| 62 | 13.92 | 16.70 | 24.09 | 29.33 | | AGE IS ATTAINED AGE. | | | |

*DECREASING TERM INSURANCE TO AGE 100 PLAN* - For this plan, the face amount decreases while premiums remain level. The face amount decreases each year with Attained Age, as shown in Table C below. We reserve the right to change the scheduled face amount, but not lower than the minimum face amount as determined from Table C.

## TABLE C
### FACE AMOUNT PER $100.00 BASIC ANNUAL PREMIUMS
### THE BASIC ANNUAL PREMIUM IS THE ANNUAL PREMIUM FOR THIS PLAN MINUS
### THE ANNUAL POLICY FEE OF $60.

| AGE | PREFERRED AND NON-TOBACCO USE | | TOBACCO USE | | AGE | PREFERRED AND NON-TOBACCO USE | | TOBACCO USE | |
|---|---|---|---|---|---|---|---|---|---|
| | SCHEDULED | MINIMUM | SCHEDULED | MINIMUM | | SCHEDULED | MINIMUM | SCHEDULED | MINIMUM |
| 23 | $73,529 | $59,880 | $47,169 | $39,370 | 63 | $6,369 | $5,307 | $3,765 | $3,069 |
| 24 | 73,529 | 59,880 | 45,248 | 37,735 | 64 | 5,879 | 4,849 | 3,453 | 2,802 |
| 25 | 73,529 | 59,880 | 43,478 | 36,231 | 65 | 5,440 | 4,442 | 3,195 | 2,563 |
| 26 | 73,529 | 59,523 | 41,841 | 34,843 | 66 | 5,037 | 4,115 | 3,016 | 2,350 |
| 27 | 73,529 | 59,523 | 40,322 | 33,557 | 67 | 4,646 | 3,795 | 2,863 | 2,162 |
| 28 | 73,529 | 59,523 | 38,759 | 32,258 | 68 | 4,271 | 3,487 | 2,710 | 1,998 |
| 29 | 73,529 | 59,523 | 37,174 | 30,959 | 69 | 4,098 | 3,186 | 2,486 | 1,848 |
| 30 | 73,529 | 59,523 | 35,714 | 29,761 | 70 | 3,755 | 2,887 | 2,278 | 1,707 |
| 31 | 72,992 | 59,523 | 34,364 | 28,653 | 71 | 3,441 | 2,570 | 2,088 | 1,536 |
| 32 | 70,921 | 59,171 | 33,112 | 27,624 | 72 | 3,291 | 2,349 | 1,907 | 1,378 |
| 33 | 68,965 | 57,471 | 31,746 | 26,455 | 73 | 3,094 | 2,107 | 1,736 | 1,233 |
| 34 | 67,114 | 55,865 | 30,581 | 25,510 | 74 | 2,811 | 1,889 | 1,578 | 1,105 |
| 35 | 65,359 | 54,347 | 29,411 | 24,509 | 75 | 2,551 | 1,700 | 1,434 | 989 |
| 36 | 63,291 | 52,631 | 28,248 | 23,529 | 76 | 2,315 | 1,537 | 1,302 | 890 |
| 37 | 60,975 | 50,761 | 27,173 | 22,624 | 77 | 2,104 | 1,395 | 1,184 | 806 |
| 38 | 60,975 | 50,000 | 26,109 | 21,739 | 78 | 1,914 | 1,274 | 1,078 | 734 |
| 39 | 58,139 | 46,728 | 24,630 | 20,533 | 79 | 1,744 | 1,166 | 982 | 671 |
| 40 | 55,248 | 43,668 | 23,255 | 19,379 | 80 | 1,592 | 1,067 | 897 | 614 |
| 41 | 52,631 | 40,485 | 21,929 | 18,281 | 81 | 1,459 | 975 | 823 | 561 |
| 42 | 50,251 | 37,735 | 20,703 | 17,241 | 82 | 1,338 | 888 | 755 | 512 |
| 43 | 47,846 | 34,965 | 19,531 | 16,286 | 83 | 1,188 | 807 | 694 | 466 |
| 44 | 44,247 | 32,573 | 18,050 | 15,037 | 84 | 1,042 | 734 | 638 | 423 |
| 45 | 40,816 | 30,120 | 16,611 | 13,850 | 85 | 959 | 670 | 587 | 385 |
| 46 | 37,735 | 27,855 | 15,360 | 12,804 | 86 | 894 | 614 | 548 | 355 |
| 47 | 34,965 | 25,773 | 14,224 | 11,848 | 87 | 804 | 565 | 508 | 326 |
| 48 | 32,258 | 23,866 | 13,623 | 11,350 | 88 | 711 | 523 | 470 | 298 |
| 49 | 29,411 | 22,026 | 12,422 | 10,351 | 89 | 654 | 487 | 432 | 271 |
| 50 | 26,809 | 20,366 | 11,312 | 9,425 | 90 | 618 | 461 | 419 | 260 |
| 51 | 24,691 | 18,691 | 10,822 | 9,017 | 91 | 593 | 429 | 404 | 258 |
| 52 | 22,471 | 17,064 | 9,861 | 8,216 | 92 | 569 | 398 | 389 | 256 |
| 53 | 20,408 | 15,552 | 8,944 | 7,451 | 93 | 540 | 369 | 371 | 252 |
| 54 | 18,416 | 14,104 | 8,077 | 6,729 | 94 | 506 | 338 | 349 | 244 |
| 55 | 16,611 | 12,787 | 7,283 | 6,067 | 95 | 462 | 302 | 321 | 232 |
| 56 | 14,947 | 11,587 | 6,557 | 5,464 | 96 | 401 | 259 | 280 | 209 |
| 57 | 13,477 | 10,537 | 6,142 | 5,117 | 97 | 334 | 207 | 234 | 181 |
| 58 | 11,547 | 9,596 | 5,773 | 4,812 | 98 | 269 | 151 | 190 | 143 |
| 59 | 10,449 | 8,710 | 5,313 | 4,428 | 99 | 209 | 103 | 148 | 103 |
| 60 | 9,025 | 7,518 | 4,901 | 4,084 | | | | | |
| 61 | 7,867 | 6,557 | 4,508 | 3,720 | | | | | |
| 62 | 7,183 | 5,988 | 4,151 | 3,409 | | NOTE: AGE IS ATTAINED AGE. | | | |

Any other exchange plan then available for exchange for this Policy will be issued at Our premium rates for that plan for the Insured's Attained Age on the exchange date based on the same Premium Class shown on Page 3.

*RIDERS* - The continuation in the new plan of any benefits provided by Rider(s) attached to this Policy which are not exchanged will be subject to the provision for continuation, if any, in each Rider. The premium for any Rider continued after exchange will be added to the premium for the new plan.

## PART 6
## SETTLEMENT OPTIONS

We will pay any death proceeds in a lump sum, unless one of the settlement options below is selected. If no option has been selected as of the death of the Insured, the Beneficiary may select one of the options below. If the Beneficiary is not an individual receiving payment in his or her own right, settlement options are available only with Our consent. Any election of an option must be by written notification to Us.

A settlement option will be available only if the amount to be paid to any Beneficiary is at least $10,000 and is also sufficient to provide a periodic installment or interest payment of at least $25.

*OPTION A. INSTALLMENTS FOR A FIXED PERIOD* - The proceeds will be paid in equal installments for a fixed period. The frequency of the installments and the fixed period will be as selected. The fixed period may not exceed 25 years. The amount of each installment will be determined from Table 1 on Page 8.

OPTION B. MONTHLY INSTALLMENTS FOR A GUARANTEED MINIMUM PERIOD AND, THEREAFTER, FOR LIFE - The proceeds will be paid in equal monthly installments for a guaranteed minimum period of 10, 15 or 20 years and, thereafter, as long as the Beneficiary lives. The amount of each monthly installment will be determined from Table 2 below based on the period selected and the age at the nearest birthday of the Beneficiary on the date the first installment is payable. If a monthly payment for a specific age shown in Table 2 is the same for more than one period, payment will be made for the longest period.

OPTION C. PROCEEDS HELD AND AVAILABLE FOR WITHDRAWAL - The proceeds will be held by Us subject to withdrawal in whole or in part at any time. Interest on any unpaid balance will be accumulated or paid annually, semiannually, quarterly or monthly, as selected.

OPTION D. INSTALLMENTS OF A SELECTED AMOUNT - The proceeds will be paid in equal installments for the amount selected until the proceeds and interest are fully paid.

The first installment under Option A, B and D is payable on the date the option becomes effective. The interest rate for Option A, B, C and D is 3-1/2% annually. We may from time to time credit or pay excess interest under any option. Any proceeds being held by Us under any option will be commingled with Our general funds.

When the Beneficiary under any of the options dies, unless otherwise provided, We will pay in one lump sum to such Beneficiary's estate:

(1) any unpaid sum left under Options C or D, plus any unpaid interest under that option; or

(2) the present value of any remaining payments under Option A; or

(3) the present value of any remaining payments for the fixed period under Option B.

## EQUAL MONTHLY INSTALLMENTS UNDER OPTION A AND B FOR EACH $1,000 PAYABLE

| TABLE 1 + | | TABLE 2 | | | | | | | | | | | | |
| Fixed Period in Years | Monthly Amount | Age + + | Guaranteed Minimum Period in Years | | | Age + + | Guaranteed Minimum Period in Years | | | Age + + | Guaranteed Minimum Period in Years | | |
| | | | 10 | 15 | 20 | | 10 | 15 | 20 | | 10 | 15 | 20 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1 | $84.65 | *6 | $3.11 | $3.11 | $3.11 | 31 | $3.49 | $3.49 | $3.48 | 56 | $4.66 | $4.59 | $4.50 |
| 2 | 43.05 | 7 | 3.12 | 3.12 | 3.12 | 32 | 3.52 | 3.51 | 3.50 | 57 | 4.74 | 4.67 | 4.56 |
| 3 | 29.19 | 8 | 3.13 | 3.13 | 3.13 | 33 | 3.54 | 3.54 | 3.53 | 58 | 4.83 | 4.75 | 4.62 |
| 4 | 22.27 | 9 | 3.14 | 3.14 | 3.14 | 34 | 3.57 | 3.56 | 3.55 | 59 | 4.92 | 4.83 | 4.69 |
| 5 | 18.12 | 10 | 3.15 | 3.15 | 3.15 | 35 | 3.60 | 3.59 | 3.58 | 60 | 5.02 | 4.91 | 4.75 |
| 6 | 15.35 | 11 | 3.16 | 3.16 | 3.16 | 36 | 3.63 | 3.62 | 3.61 | 61 | 5.12 | 5.00 | 4.82 |
| 7 | 13.38 | 12 | 3.17 | 3.17 | 3.17 | 37 | 3.66 | 3.65 | 3.64 | 62 | 5.23 | 5.09 | 4.89 |
| 8 | 11.90 | 13 | 3.18 | 3.18 | 3.18 | 38 | 3.69 | 3.68 | 3.67 | 63 | 5.35 | 5.19 | 4.96 |
| 9 | 10.75 | 14 | 3.20 | 3.19 | 3.19 | 39 | 3.73 | 3.72 | 3.70 | 64 | 5.47 | 5.29 | 5.03 |
| 10 | 9.83 | 15 | 3.21 | 3.21 | 3.20 | 40 | 3.76 | 3.75 | 3.74 | 65 | 5.60 | 5.39 | 5.09 |
| 11 | 9.09 | 16 | 3.22 | 3.22 | 3.22 | 41 | 3.80 | 3.79 | 3.77 | 66 | 5.73 | 5.49 | 5.16 |
| 12 | 8.46 | 17 | 3.23 | 3.23 | 3.23 | 42 | 3.84 | 3.83 | 3.81 | 67 | 5.87 | 5.60 | 5.23 |
| 13 | 7.94 | 18 | 3.25 | 3.25 | 3.24 | 43 | 3.88 | 3.87 | 3.85 | 68 | 6.02 | 5.70 | 5.29 |
| 14 | 7.49 | 19 | 3.26 | 3.26 | 3.26 | 44 | 3.93 | 3.91 | 3.89 | 69 | 6.18 | 5.81 | 5.35 |
| 15 | 7.10 | 20 | 3.28 | 3.27 | 3.27 | 45 | 3.97 | 3.95 | 3.93 | 70 | 6.34 | 5.92 | 5.40 |
| 16 | 6.76 | 21 | 3.29 | 3.29 | 3.29 | 46 | 4.02 | 4.00 | 3.97 | 71 | 6.51 | 6.03 | 5.45 |
| 17 | 6.47 | 22 | 3.31 | 3.31 | 3.30 | 47 | 4.07 | 4.05 | 4.01 | 72 | 6.69 | 6.13 | 5.50 |
| 18 | 6.20 | 23 | 3.33 | 3.32 | 3.32 | 48 | 4.13 | 4.10 | 4.06 | 73 | 6.87 | 6.23 | 5.54 |
| 19 | 5.97 | 24 | 3.34 | 3.34 | 3.34 | 49 | 4.18 | 4.15 | 4.11 | 74 | 7.05 | 6.33 | 5.58 |
| 20 | 5.75 | 25 | 3.36 | 3.36 | 3.35 | 50 | 4.24 | 4.21 | 4.16 | 75 | 7.24 | 6.43 | 5.61 |
| 21 | 5.56 | 26 | 3.38 | 3.38 | 3.37 | 51 | 4.30 | 4.26 | 4.21 | 76 | 7.44 | 6.52 | 5.64 |
| 22 | 5.39 | 27 | 3.40 | 3.40 | 3.39 | 52 | 4.36 | 4.32 | 4.26 | 77 | 7.63 | 6.60 | 5.66 |
| 23 | 5.24 | 28 | 3.42 | 3.42 | 3.41 | 53 | 4.43 | 4.39 | 4.32 | 78 | 7.82 | 6.68 | 5.68 |
| 24 | 5.09 | 29 | 3.44 | 3.44 | 3.43 | 54 | 4.50 | 4.45 | 4.38 | 79 | 8.02 | 6.75 | 5.70 |
| 25 | 4.96 | 30 | 3.47 | 3.46 | 3.46 | 55 | 4.58 | 4.52 | 4.43 | **80 | 8.20 | 6.81 | 5.71 |

+  Multiply the monthly installment found in Table 1 by 2.991 to obtain the quarterly installment; by 5.957 to obtain the semiannual installment; and by 11.813 to obtain the annual installment.

+ + The age is the age in years at the nearest birthday of the Beneficiary on the date the first installment is payable.

*  And under

**  And over

**MODIFIED PREMIUM TERM LIFE INSURANCE**

**EXCHANGEABLE AFTER FIVE YEARS TO ANNUAL RENEWABLE LEVEL
OR DECREASING TERM INSURANCE TO AGE 100**

**PREMIUMS ARE SUBJECT TO CHANGE**

**NONPARTICIPATING**

# PRIMERICA LIFE INSURANCE COMPANY

Home Office: Boston, Massachusetts
Executive Offices: 3120 Breckinridge Boulevard, Duluth, Georgia 30199-0001

## TERMINAL ILLNESS ACCELERATED BENEFITS

### BENEFITS

**Description of Benefits** - We will advance the Accelerated Benefit if you develop a Terminal Illness, subject to all of the provisions of this Benefit and the Policy. We will pay to the Owner or to his designee, upon his written direction and upon forms acceptable to us, 40% of the Face Amount of the Policy and/or Riders, if any, not to exceed a maximum of $250,000. The existing Policy and/or Riders must have been in force for at least two years. This Benefit will be paid in a lump sum.

An administrative fee of $200, plus interest will be charged for this Accelerated Benefit. Interest will be calculated at the Prime Interest Rate as published in the Wall Street Journal, or any other successor to that publication, or a similar trade journal, on the date when payment is advanced. The interest is computed on the total of the amount advanced and the administrative fee. The total interest will not exceed the maximum rate permitted by the laws of the state in which the Policy is delivered.

The Accelerated Benefit advance, administrative fee, and interest will be deducted from the death benefit proceeds when those benefits become payable.

In order to exercise this Benefit, we must receive at our Executive Offices a written Physician Statement which diagnoses your medical condition as being a Terminal Illness, as defined herein.

We have the right to require, at our expense, that you be examined by a Physician designated by us in order to verify the diagnosis. We must also receive a written, notarized consent on a form provided by us of any irrevocable Beneficiary or assignee before this option may be exercised.

This Benefit may be taxable upon receipt of the Accelerated Benefit advance.
As with all tax matters, you may want to consult your personal tax advisor
prior to exercising acceptance of this Benefit.

### DEFINITIONS

"We" or "Us" refers to the Company. "You" or "Your" refers to the Insured and/or the Insured Spouse and/or the Other Insured Person.

The Owner refers to the Owner of the Policy.

**Physician** - Physician means an individual who is licensed to practice medicine and treat illness or injury in the state in which treatment is received and who is acting within the scope of that license. Physician does not include: 1) you; 2) the Owner; 3) a person who lives with you or the Owner; or 4) a person who is part of your or the Owner's immediate family.

**Physician Statement** - A Physician Statement means a statement acceptable to us, signed by a Physician, which: 1) gives the Physician's diagnosis of your noncorrectable medical condition; 2) is dated the same as the date of diagnosis, with the date of diagnosis at least 14 days after the onset of the noncorrectable medical condition; and 3) states that, with reasonable medical certainty, the noncorrectable medical condition will result in your death in less than 6 months from the date of the Physician Statement.

**Terminal Illness** - Terminal Illness is a noncorrectable medical condition that with reasonable medical certainty, will result in your death in less than 6 months from the date of the Physician Statement.

**Accelerated Benefit** - An Accelerated Benefit is the advance prior to the date of your death of 40% of the Face Amount of the Policy and/or Riders, if any, not to exceed a maximum of $250,000. The Accelerated Benefit advance, administrative fee, and interest result in the establishment of a lien against the Face Amount of the Policy and/or Riders, if any.

## GENERAL PROVISIONS

**Future Premiums -** The advance of an Accelerated Benefit will have no effect on the amount of future premiums, if any, required under the Policy and/or Riders, if any.

**Waiver of Premium -** If a Disability Waiver of Premium Benefit Rider is attached to this Policy and the Insured otherwise qualifies for that Benefit and for the Accelerated Benefit, then for purposes of the Disability Waiver of Premium Benefit Rider, the Insured will be deemed to be Totally Disabled until the final death benefit proceeds are paid.

**Assignment -** This Benefit must not be legally or equitably assigned except to us as security for the lien. We must receive an assignment form making us assignee of this Policy for the amount of the Accelerated Benefit.

We must receive a notarized consent form from all irrevocable Beneficiaries, if any. We also reserve the right to require a consent form from a spouse, other Beneficiaries, or any other person if, in our discretion, such person's consent is necessary to protect our interests.

**Other Conditions -** The Accelerated Benefit must be requested voluntarily by the Owner. This Benefit provides for the advance of the proceeds of the Policy normally payable at your death. This Benefit is not meant to cause the Owner to involuntarily obtain proceeds which ultimately would be payable to the Beneficiary. Therefore, the Owner is not required to exercise this Benefit: 1) if the Owner is required by law to use this Benefit to meet the claims of creditors, whether in bankruptcy or otherwise; or 2) if the Owner is required by a government agency to use this Benefit in order to apply for, obtain, or otherwise keep a government benefit or entitlement; or 3) if the Benefit would adversely affect the recipient's eligibility for Medicaid.

**How to Apply For This Benefit -** You and the Owner must apply for this option in writing, on forms acceptable to us, and provide proof satisfactory to us, including a Physician Statement which states that you have a Terminal Illness. We have the right to have you examined at our expense by a physician we choose.

**Exclusion -** This Benefit does not apply to any Children's Term Insurance Rider that may be attached to your Policy.

**Conformity With State Statutes -** If any provision of the Benefit is in conflict with the laws of the state in which you reside, the provision is automatically amended to meet the minimum requirements of such laws.

**Termination -** This Benefit will terminate on the earliest of the following dates: 1) the date on which your Policy terminates; or 2) the date on which the Owner's written request to cancel this Benefit is received at our Executive Offices, provided the Owner's written request is received prior to an Accelerated Benefit advance.

Signed at Duluth, Georgia.

*Gerald L. Baxter*

Gerald L. Baxter, *Secretary*
Primerica Life Insurance Company

ML-E70                                                                                                                    12.91

# PRIMERICA LIFE INSURANCE COMPANY

Home Office: Boston, Massachusetts
Executive Offices: 3120 Breckinridge Boulevard, Duluth, Georgia 30199-0001

## INSURED TERM INSURANCE RIDER

### PREMIUMS ARE SUBJECT TO CHANGE

We have issued this Rider as a part of the Policy to which it is attached. Any payment under this Rider is subject to the provisions of this Rider and the Policy. In case of conflict between this Rider and the Policy, the provisions of this Rider will control.

This Rider is effective at 12:01 A.M. on the Rider Date of Issue.

### BENEFIT

We will pay the Rider Face Amount, in a lump sum, to the Beneficiary of this Rider upon receiving due proof that the Insured died before the Rider Expiry Date and while this Rider was in force.

### DEFINITIONS

*INSURED* - The person whose life the Policy insures and who is named in the Policy and Rider Specifications.

*BENEFICIARY* - The person(s) to whom the rider proceeds are payable at the death of the Insured. This is the person(s) named in the application as the Beneficiary, unless later changed. (See Change of Beneficiary Provision, below)

*RIDER FACE AMOUNT* - The amount for each rider year which is shown in Table A on Rider Page 3A.

*RIDER DATE* - The date (shown on Rider Page 3) from which rider anniversaries, rider years and rider months are measured.

*RIDER DATE OF ISSUE* - The date (shown on Rider Page 3) on which We issue the Rider to You. This date controls the below Incontestability and Suicide Exclusion Provisions.

*RIDER ISSUE AGE* - The Insured's age on the birthday nearest the Rider Date.

*RIDER ATTAINED AGE* - The Insured's Rider Issue Age plus the number of rider years since the Rider Date.

*RIDER EXPIRY DATE* - The date shown on Rider Page 3. This Rider is not in force on or after this date.

### GENERAL PROVISIONS

*CONSIDERATION* - This Rider is issued in consideration of: (1) the application for this Rider, a copy of which is attached to the Policy; and (2) payment of the first premium for this Rider.

*PREMIUM PAYMENTS* - Premiums for this Rider are payable in addition to, but under the same terms and conditions as, the premiums for the Policy. The premiums shown on Rider Page 3A are for the premium payment option You chose. Subject to Our approval, You may change the premium payment option for future premium payments upon Notice to Us. We will provide You with premium rates for other payment options upon written request. Premiums are not due after the Insured's death or the Rider Expiry Date or when this Rider terminates.

*PREMIUM CHANGES BY COMPANY* - Premiums for this Rider will be the scheduled premiums shown on Rider Pages 3 and 3A, unless changed by Us. We reserve the right to change the scheduled premiums. We will not change them more often than once a year, and in no event will the scheduled premiums be greater than the maximum premiums shown on Rider Page 3A. Any such change will apply uniformly to all riders of this form issued in the same calendar year to Insureds having the same Rider Issue Age, Premium Class and state of residence. We will not change the classification or premium for this Rider due to a deterioration in your health. Details of all changes in premium will be on file with the Florida Insurance Department.

We will mail written notice to You at least 60 days prior to the date on which a change in the scheduled premiums will become effective. We will send You new rider specifications pages to reflect any changes in scheduled premiums.

*OTHER PREMIUM CHANGES* - Changes You make to the Face Amount of the Policy or the Face Amount of any Riders may also change Your scheduled premiums.

10.94

*INCONTESTABILITY* - We will not contest this Rider after it has been in force for two years during the Insured's life. The two years begin on the Rider Date of Issue.

If insurance coverage to be replaced, as shown in the application, has terminated: (a) prior to the Insured's death; and (b) between 60 days before and 60 days after the Rider Date of Issue, We will not contest the amount of the replaced coverage that would not have been contestable had it not been replaced. If it is not possible to terminate any coverage to be replaced because of its provisions within 60 days after the Rider Date of Issue, such 60-day period will be extended to the earliest possible date for the coverage to be terminated under its provisions.

*SUICIDE EXCLUSION* - If the Insured dies by suicide, while sane or insane, within two years of the Rider Date of Issue, We are only liable for the premiums paid.

If insurance coverage to be replaced, as shown in the application, has terminated: (a) prior to the Insured's death by suicide; and (b) between 60 days before and 60 days after the Rider Date of Issue, We will not contest the amount of the replaced coverage that would not have been contestable had it not been replaced. If it is not possible to terminate any coverage to be replaced because of its provisions within 60 days after the Rider Date of Issue, such 60-day period will be extended to the earliest possible date for the coverage to be terminated under its provisions.

*MISSTATEMENT OF AGE* - If the age of the Insured has been misstated in the application, We will be liable only for the amount of insurance the premiums paid would have purchased for the correct age.

*CHANGE OF BENEFICIARY* - You can change a Beneficiary of this Rider by Notice to Us. You can only change a Beneficiary while the Insured is alive. A Beneficiary designated irrevocably on Our records may not be changed except with the written consent of that Beneficiary. A Beneficiary change will take effect on the date You signed the Notice to Us. If the Insured died before We receive this Notice, the change is effective, subject to any prior payment of proceeds.

*TERMINATION* - This Rider shall terminate and no longer be in force: (1) if any premium remains unpaid after the end of the grace period; (2) if the Policy terminates or is continued under a nonforfeiture provision, if any; (3) if this Rider is exchanged to a new policy; (4) on and after the Rider Expiry Date; or (5) on and after the date You cancel it.

*CANCELLATION* - You may cancel this Rider at any time by sending written Notice to Us. Your Rider will be canceled as of the date We receive the Notice, or, if stated in the Notice, as of a later date. If this Rider is canceled before the Rider Expiry Date and premiums have been paid in advance, We will refund any unearned portion of the premiums paid beyond the end of the rider month in which cancellation occurred.

*PRIVILEGE OF CONTINUATION* - If the Policy, exclusive of this Rider, is exchanged, this Rider may be continued as a part of the new plan of insurance.

*EXCHANGE PROVISION* - You may exchange this Rider at any time after it has been in force for five years to the annual renewable level term insurance to age 100 plan described in the Policy; or the decreasing term insurance to age 100 plan described in the Policy; or any other plan of insurance then available for exchange for this Rider. We will not require evidence of insurability. The new plan will take effect on the exchange date and this Rider will terminate. However, the new plan's Incontestability and Suicide Exclusion Provisions will be controlled by the Rider Date of Issue. We will issue either revised specifications pages or a new policy.

The following conditions are necessary for exchange: (1) We receive Notice to Us requesting an exchange; (2) the face amount of the new plan is not less than the minimum required by Us nor greater than the Face Amount in effect under this Rider on the exchange date; (3) the required premium is paid within 31 days after the exchange date; (4) the Insured is alive; and (5) this Rider is in force on the exchange date.

Any other exchange plan then available for exchange for this Rider will be issued at Our premium rates for that plan for the Rider Attained Age on the exchange date based on the same Premium Class shown on Rider Page 3.

Signed at Duluth, Georgia, on the Rider Date of Issue.

*Secretary*

*President*

RIDER SPECIFICATIONS

POLICY NUMBER: 0431226692          INSURED: PATRICIA A WASHINGTON

RIDER ISSUE AGE: 40                RIDER DATE OF ISSUE: JUNE 17, 1996

INITIAL RIDER
    FACE AMOUNT: $95,000           RIDER DATE:          JUNE 18, 1996

PREMIUM CLASS:   STANDARD/         RIDER EXPIRY DATE:   JUNE 18, 2046
                 NON-TOBACCO USE

| FORM NUMBER | PLAN NAME | INITIAL RIDER FACE AMOUNT | SCHEDULED ANNUAL PREMIUMS* YEARS 1-5 |
|---|---|---|---|
| PL-125FL | INSURED TERM INSURANCE RIDER | $95,000 | $359.10 |

*The Scheduled Annual Premiums shown above are guaranteed for the years for
which premium amounts are shown. The premiums for the premium payment
option You chose are shown on Rider Page 3A and explained in the Premium
Changes Provisions.

PL-125FL                   Rider Page 3

**(THIS PAGE INTENTIONALLY LEFT BLANK)**

RIDER SPECIFICATIONS (CONT'D)

---

## TABLE A
### MONTHLY PREMIUMS FOR RIDER CONTINUATION TO EXPIRY DATE

| RIDER YEARS | RIDER ATTAINED AGE | SCHEDULED MONTHLY PREMIUMS* | MAXIMUM MONTHLY PREMIUMS | RIDER FACE AMOUNT |
|---|---|---|---|---|
| 01 | 40 | $34.12 | $34.12 | $95,000.00 |
| 02 | 41 | $34.12 | $34.12 | $95,000.00 |
| 03 | 42 | $34.12 | $34.12 | $95,000.00 |
| 04 | 43 | $34.12 | $34.12 | $95,000.00 |
| 05 | 44 | $34.12 | $34.12 | $95,000.00 |
| 06 | 45 | $34.12 | $65.80 | $95,000.00 |
| 07 | 46 | $34.12 | $65.80 | $95,000.00 |
| 08 | 47 | $34.12 | $65.80 | $95,000.00 |
| 09 | 48 | $34.12 | $65.80 | $95,000.00 |
| 10 | 49 | $34.12 | $65.80 | $95,000.00 |
| 11 | 50 | $34.12 | $65.80 | $95,000.00 |
| 12 | 51 | $34.12 | $65.80 | $95,000.00 |
| 13 | 52 | $34.12 | $65.80 | $95,000.00 |
| 14 | 53 | $34.12 | $65.80 | $95,000.00 |
| 15 | 54 | $34.12 | $65.80 | $95,000.00 |
| 16 | 55 | $34.12 | $65.80 | $95,000.00 |
| 17 | 56 | $34.12 | $65.80 | $95,000.00 |
| 18 | 57 | $34.12 | $65.80 | $95,000.00 |
| 19 | 58 | $34.12 | $65.80 | $95,000.00 |
| 20 | 59 | $34.12 | $65.80 | $95,000.00 |
| 21 | 60 | $34.12 | $65.80 | $95,000.00 |
| 22 | 61 | $34.12 | $65.80 | $95,000.00 |
| 23 | 62 | $34.12 | $65.80 | $95,000.00 |
| 24 | 63 | $34.12 | $65.80 | $95,000.00 |
| 25 | 64 | $34.12 | $65.80 | $95,000.00 |
| 26 | 65 | $165.88 | $203.16 | $95,000.00 |
| 27 | 66 | $179.15 | $219.31 | $95,000.00 |
| 28 | 67 | $194.22 | $237.81 | $95,000.00 |
| 29 | 68 | $211.28 | $258.75 | $95,000.00 |
| 30 | 69 | $220.21 | $283.21 | $95,000.00 |
| 31 | 70 | $240.34 | $312.54 | $95,000.00 |
| 32 | 71 | $262.27 | $351.17 | $95,000.00 |
| 33 | 72 | $274.18 | $384.11 | $95,000.00 |
| 34 | 73 | $291.69 | $428.15 | $95,000.00 |
| 35 | 74 | $321.02 | $477.61 | $95,000.00 |

*Scheduled premiums may change, but they will not increase beyond the maximum premiums.  See Premium Changes Provisions.

RIDER SPECIFICATIONS (CONT'D)

## TABLE A (CONT'D)
### MONTHLY PREMIUMS FOR RIDER CONTINUATION TO EXPIRY DATE

| RIDER YEARS | RIDER ATTAINED AGE | SCHEDULED MONTHLY PREMIUMS* | MAXIMUM MONTHLY PREMIUMS | RIDER FACE AMOUNT |
|---|---|---|---|---|
| 36 | 75 | $353.69 | $530.67 | $95,000.00 |
| 37 | 76 | $389.70 | $587.17 | $95,000.00 |
| 38 | 77 | $428.87 | $646.56 | $95,000.00 |
| 39 | 78 | $471.47 | $708.20 | $95,000.00 |
| 40 | 79 | $517.41 | $773.63 | $95,000.00 |
| 41 | 80 | $566.86 | $845.38 | $95,000.00 |
| 42 | 81 | $618.49 | $925.25 | $95,000.00 |
| 43 | 82 | $674.44 | $1,015.50 | $95,000.00 |
| 44 | 83 | $759.19 | $1,117.21 | $95,000.00 |
| 45 | 84 | $865.95 | $1,228.40 | $95,000.00 |
| 46 | 85 | $940.77 | $1,346.53 | $95,000.00 |
| 47 | 86 | $1,009.18 | $1,469.27 | $95,000.00 |
| 48 | 87 | $1,121.72 | $1,595.53 | $95,000.00 |
| 49 | 88 | $1,268.65 | $1,722.79 | $95,000.00 |
| 50 | 89 | $1,379.75 | $1,852.75 | $95,000.00 |

*Scheduled premiums may change, but they will not increase beyond the
 maximum premiums.  See Premium Changes Provisions.

# PRIMERICA LIFE INSURANCE COMPANY

Home Office: Boston, Massachusetts
Executive Offices: 3120 Breckinridge Boulevard, Duluth, Georgia 30199-0001

## INCREASING BENEFIT RIDER ON INSURED
### PREMIUMS ARE SUBJECT TO CHANGE

We have issued this Rider as a part of the Policy to which it is attached. Any payment under this Rider is subject to the provisions of this Rider and the Policy. In case of conflict between this Rider and the Policy, the Rider provisions will control.

This Rider becomes effective at 12:01 A.M. on the Date of Issue as indicated on Rider Page 3.

### BENEFIT

The Rider Face Amounts shown on Rider Page 3A will become effective at the beginning of each rider year as determined by the Rider Date shown on Rider Page 3, unless declined by you with written notice in advance of the increase effective date. If any increase is ever declined by you, all future increases will be forfeited. In addition, if the Base Coverage to which this Rider applies is decreased, all future increases under this Rider will be forfeited.

If an automatic increase is declined, coverage will remain level for the remaining period of the Rider for the amount of insurance in force under this Rider prior to the declination of increased coverage.

### DEFINITIONS

*INSURED* - The person named in the Policy and Rider Schedules whose life is insured under the Policy and this Rider.

*RIDER FACE AMOUNT* - The Rider Face Amount is shown on Rider Pages 3 and 3A.

*RIDER EXPIRY DATE* - This date is shown on Rider Page 3. This Rider is no longer in force on and after that date.

*BENEFICIARY* - Unless otherwise stated in the application or by Notice to Us, the Beneficiary of this Rider will be the same as the Beneficiary of the Policy. The Beneficiary Provisions of the Policy shall apply to this Rider.

*RIDER DATE* - This date is shown on Rider Page 3 and is the effective date of coverage under this Rider. Rider anniversaries, rider years and rider months are measured from that date.

*RIDER ISSUE AGE* - The Insured's age on the birthday nearest the Rider Date.

*RIDER ATTAINED AGE* - The Insured's Issue Age plus the number of Rider years elapsed since the Rider Date.

*BASE COVERAGE* - The original Policy and amount of insurance on the Primary Insured.

### GENERAL PROVISIONS

*CONSIDERATION* - This Rider is issued in consideration of the application for this Rider, a copy of which is attached to the Policy.

*PREMIUMS* - Premiums required under this Rider are payable in addition to and under the same terms and conditions as the premiums for the Policy, except that premiums required under this Rider shall cease to be payable whenever this Rider terminates. Premiums are not payable on and after the Rider Expiry Date.

If a scheduled increase in the Rider Face Amount is declined, the rider premium will remain the same as in the year prior to such declination until the end of rider year 20, or attained age 70 if earlier. Subsequent rider premiums are based on the rates per $1,000 of Rider Face Amount that are shown on Rider Page 3A.

*PREMIUM CHANGES BY COMPANY* - Premiums payable each year for benefits under this Rider will be the scheduled annual premiums shown on Rider Pages 3 and 3A, unless changed by us. We will review the scheduled premiums each year. We reserve the right to change the scheduled premiums after the first Rider year. We will not change them more often than once a year, and in no event will the scheduled premiums be greater than the corresponding maximum premiums shown on Rider Page 3A. We will send you revised Rider Specifications pages to reflect any change in premiums.

We will mail written notice to you at least 60 days prior to the date on which a change in the scheduled premiums will become effective. Any such change will apply uniformly to all Riders of this form issued in the same calendar year to Insureds having the same Rider Issue Age, Premium Class, and state of residence. We will not change the classification or premium for this Rider due to a deterioration in your health. Details of all changes in premium will be on file with the Florida Insurance Department.

*OTHER PREMIUM CHANGES* - Changes you make to the total Face Amount coverage of the Policy and any applicable Riders may result in a change to your scheduled premiums of this Rider. We will send you revised Rider Specifications pages to reflect any change in premiums.

*INCONTESTABILITY* - This Rider will be incontestable after it has been in force for two years during the lifetime of the Insured. The two years will begin as of the Rider Date of Issue.

*SUICIDE EXCLUSION* - If the Insured dies by suicide within two years of the Rider Date of Issue, our only liability under this Rider will be for the amount of premiums paid for it.

*MISSTATEMENT OF AGE* - If the age of the Insured has been misstated in the application, we will be liable only for the amount of insurance the premiums paid for this Rider would have purchased for the correct age.

*NONPARTICIPATION* - This Rider does not participate in our profits or surplus.

*TERMINATION* - This Rider shall terminate and no longer be in force: (1) if any premium remains unpaid after the end of the grace period; (2) if the Policy terminates or is continued under a nonforfeiture provision, if any; (3) if the Policy is exchanged for a new plan of insurance; (4) on and after the Rider Expiry Date; or (5) on and after the date as of which you cancel it.

*CANCELLATION* - Upon written request by the Owner of the Policy, this Rider may be cancelled on any premium due date.

*EXCHANGE PROVISION* - You may exchange coverage accumulated under this Rider on the Rider Expiry Date or any time after it has been in force for five years to a new plan of insurance on the life of the Insured if the following conditions are met: (1) we receive Notice to Us for exchange; (2) the required premium is paid to us no later than 31 days after the exchange date while the Insured is alive; (3) this Rider is in force on the exchange date; (4) the new plan is (a) the yearly renewable level term insurance to age 100 plan; or (b) the decreasing term insurance to age 100 plan; or (c) any other plan of insurance then available; and (5) the Face Amount of the new plan is not less than the minimum required by us for the plan selected nor greater than the Face Amount in effect under this Rider on the exchange date. We will not require evidence of insurability. The new plan will take effect on the exchange date. However, the Incontestability and Suicide Exclusion Provisions will be controlled by the Date of Issue of this Rider. We will issue revised specifications pages to reflect the exchanged plan of insurance.

Any other exchange plan then available will be issued at our premium rates for the Insured's Rider Attained Age on the exchange date and for the same Premium Class shown on Rider Page 3.

Signed at Duluth, Georgia, on the Date of Issue of this Rider.

Secretary

President

| FORM NUMBER | PLAN NAME | FIRST YEAR RIDER FACE AMOUNT* | FIRST YEAR SCHEDULED ANNUAL PREMIUM* |
|---|---|---|---|
| PL-204FL | INCREASING BENEFIT RIDER ON INSURED | NONE | NONE |

*There is no face amount or premium for this Rider in the first Rider Year. The face amount and premium will increase in years 2 through 11. You have the option to decline any such increase. If You choose to decline an increase, You forfeit the right to further increases under this Rider. The face amounts and Scheduled and Maximum Premiums are shown on Page 3A.

RIDER SCHEDULE

POLICY NUMBER:        0431226692

INSURED:              PATRICIA A WASHINGTON

ISSUE AGE:            40

DATE OF ISSUE:        JUNE 17, 1996

PREMIUM CLASS:        STANDARD/NON-TOBACCO USE

RIDER DATE:           JUNE 18, 1996

RIDER EXPIRY DATE:    JUNE 18, 2046

## RIDER SPECIFICATIONS (CONT'D)

### TABLE A
### RIDER FACE AMOUNT AND
### ANNUAL PREMIUMS PER $1,000 FACE AMOUNT
### FOR CONTINUATION TO RIDER EXPIRY DATE

| RIDER YEAR | RIDER FACE AMOUNT* | SCHEDULED ANNUAL PREMIUMS* | MAXIMUM ANNUAL PREMIUMS* |
|---|---|---|---|
| 2 | 5,000.00 | 3.43 | 4.72 |
| 3 | 10,000.00 | 3.43 | 4.83 |
| 4 | 15,000.00 | 3.43 | 4.93 |
| 5 | 20,000.00 | 3.43 | 5.05 |
| 6 | 25,000.00 | 3.70 | 5.17 |
| 7 | 30,000.00 | 3.96 | 5.35 |
| 8 | 35,000.00 | 4.21 | 5.56 |
| 9 | 40,000.00 | 4.48 | 5.81 |
| 10 | 45,000.00 | 4.73 | 6.06 |
| 11-20 | 50,000.00 | 4.99 | 6.33 |
| 21-30 | 50,000.00 | 16.64 | 19.77 |
| 31 | 50,000.00 | 27.17 | 34.63 |
| 32 | 50,000.00 | 29.70 | 39.27 |
| 33 | 50,000.00 | 31.10 | 43.34 |
| 34 | 50,000.00 | 33.14 | 48.74 |
| 35 | 50,000.00 | 36.53 | 54.86 |
| 36 | 50,000.00 | 40.30 | 61.49 |
| 37 | 50,000.00 | 44.48 | 68.63 |
| 38 | 50,000.00 | 49.02 | 76.23 |
| 39 | 50,000.00 | 53.96 | 84.22 |
| 40 | 50,000.00 | 59.31 | 92.79 |
| 41 | 50,000.00 | 65.07 | 102.25 |
| 42 | 50,000.00 | 71.10 | 112.85 |
| 43 | 50,000.00 | 77.63 | 124.89 |
| 44 | 50,000.00 | 87.50 | 138.53 |
| 45 | 50,000.00 | 99.94 | 153.56 |
| 46 | 50,000.00 | 108.72 | 169.70 |
| 47 | 50,000.00 | 116.77 | 186.65 |
| 48 | 50,000.00 | 129.96 | 204.31 |
| 49 | 50,000.00 | 147.17 | 222.36 |
| 50 | 50,000.00 | 160.25 | 241.01 |

\* THE FACE AMOUNT AND PREMIUMS FOR THIS RIDER INCREASE IN YEARS 2 THROUGH 11. YOU HAVE THE OPTION TO DECLINE ANY SUCH INCREASE. IF YOU CHOOSE TO DECLINE AN INCREASE, YOU FORFEIT THE RIGHT TO FURTHER INCREASES UNDER THIS RIDER. THE FACE AMOUNTS, SCHEDULED PREMIUMS AND MAXIMUM PREMIUMS SHOWN ABOVE ASSUME ALL INCREASES ARE ELECTED. THE SCHEDULED PREMIUMS ARE SUBJECT TO CHANGE BUT MAY NOT BE INCREASED BEYOND THE MAXIMUM PREMIUMS. SEE PREMIUM CHANGES BY COMPANY PROVISION.

# PRIMERICA LIFE INSURANCE COMPANY

Home Office: Boston, Massachusetts
Executive Offices: 3120 Breckinridge Boulevard, Duluth, Georgia 30199-0001

## DISABILITY WAIVER OF PREMIUM BENEFIT RIDER

"We" or "Us" refers to the Company. "You" or "Your" refers to the Insured.

We have issued this Rider as a part of the Policy to which it is attached.

### BENEFIT

We will waive, subject to the provisions of this Rider each premium falling due after the commencement and during the continuance of your Total Disability which begins while this Rider is in force. In order to qualify for the waiver of premium benefit under this Rider, you must be disabled for a continuous six months. After you have been disabled for a continuous six months, we will waive any premiums falling due thereafter and refund any premium paid during such six months. Premiums will be waived in accordance with the mode of premium payment in effect at the commencement of Total Disability. Each premium waived will have the same effect as if it had been paid to us.

### DEFINITIONS AND EXCLUSIONS

**Definition of Total Disability -** "Total Disability" means an incapacity which results from bodily injury or disease and prevents you from performing the substantial and material duties of any work for income or profit for which you are, or become, fitted by reason of education, training or experience. The injury or disease must originate while this Rider is in force. You must be under the care of a currently licensed physician of the healing arts and not a member of your household. The total loss of the sight of both eyes, or of the use of both hands, both feet, or one hand and one foot, will be presumed Total Disability while such total loss continues.

**Age Limitation -** No benefits will be allowed or paid under this Rider if commencement of Total Disability is after the policy anniversary nearest your 60th birthday.

**Exclusion from Coverage -** No benefits will be allowed or paid under this Rider if Total Disability results directly or indirectly from: (1) intentionally self-inflicted injury; or (2) during the commission of a felony.

**Rider Date -** This date is shown on Rider Page 3 and is the effective date of coverage under this Rider. Rider anniversaries, rider years and rider months are measured from that date.

### GENERAL PROVISIONS

**Premium Payments -** This Rider is issued in consideration of the application, a copy of which is attached, and payment of the premiums for this Rider. It is payable under the same conditions as the premiums for the Policy. The premium for this Rider will cease to be payable whenever this Rider terminates. If the premium for any other Rider attached to the Policy ceases to be payable, then the part of the premium for this Rider payable with respect to such other Rider will cease to be payable.

**Policy Provisions -** All provisions of the Policy which are not inconsistent with the provisions of this Rider apply to this Rider.

**Notice and Proof of Disability -** Written notice of Total Disability must be given to us at our Executive Office during your lifetime and the continuance of Total Disability. Failure to give such notice will not invalidate any claim if it is shown that such notice was given as soon as was reasonably possible. Due proof of Total Disability must be submitted to our Executive Office. Although proof of disability may have been accepted by us as satisfactory, you must at any time, on demand from us, furnish due proof of the continuance of Total Disability. At our option proof of the continuance of Total Disability may include an examination of you by a medical examiner designated by us. Proof of the continuance of Total Disability shall not be required by us more than once each year after Total Disability has continued for two full years. In no event will Total Disability be considered to have commenced more than one year before the date due proof of Total Disability is received by us.

**Recovery from Disability -** The benefits provided by this Rider will be discontinued if you: (1) fail to furnish any such proof; or (2) refuse to submit to such examination; or (3) are no longer totally disabled.

**Termination** - This Rider will terminate: (1) if any premium remains unpaid after the end of the grace period; (2) if the Policy is surrendered or continued under a nonforfeiture provision, if any; (3) if the Policy terminates; (4) at the policy anniversary nearest your 60th birthday; or (5) upon written request on any premium due date.

Termination of this Rider will not affect any otherwise valid claim to benefits for Total Disability which commenced before the termination date.

Signed at Duluth, Georgia, on the Date of Issue of this Rider.

*Secretary*                                                      *President*

| FORM NUMBER | PLAN NAME | SCHEDULED ANNUAL PREMIUM* |
|---|---|---|
| PL-WPA | DISABILITY WAIVER OF PREMIUM | 22.00 |

*The Scheduled Annual Premium shown above is guaranteed for the First
Rider Year. Subsequent annual premiums are also guaranteed and are shown
on Page 3A.

### RIDER SCHEDULE

POLICY NUMBER:         0431226692

INSURED:               PATRICIA A WASHINGTON

DATE OF ISSUE:         JUNE 17, 1996

RIDER EXPIRY DATE:     JUNE 18, 2016

RIDER DATE:            JUNE 18, 1996

## RIDER SPECIFICATIONS (CONT'D)

### TABLE A
### ANNUAL PREMIUMS FOR DISABILITY WAIVER OF PREMIUM BENEFIT RIDER

| RIDER YEARS | SCHEDULED ANNUAL PREMIUMS | MAXIMUM ANNUAL PREMIUMS |
|:---:|:---:|:---:|
| 2 | $23.00 | $23.00 |
| 3 | $24.00 | $24.00 |
| 4 | $25.00 | $25.00 |
| 5 | $26.00 | $26.00 |
| 6 | $27.60 | $27.60 |
| 7 | $29.70 | $29.70 |
| 8 | $32.00 | $32.00 |
| 9 | $34.90 | $34.90 |
| 10 | $38.35 | $38.35 |
| 11 | $42.50 | $42.50 |
| 12 | $42.50 | $42.50 |
| 13 | $42.50 | $42.50 |
| 14 | $42.50 | $42.50 |
| 15 | $42.50 | $42.50 |
| 16 | $42.50 | $42.50 |
| 17 | $42.50 | $42.50 |
| 18 | $42.50 | $42.50 |
| 19 | $42.50 | $42.50 |
| 20 | $42.50 | $42.50 |

# PRIMERICA LIFE INSURANCE COMPANY
Executive Offices: 3120 Breckinridge Blvd, Duluth, Ga. 30199-0001-1-800-257-4725

## APPLICATION FOR LIFE INSURANCE - PART 1

`* A 1 5 0 3 8 4 7 *`

### PROPOSED PRIMARY INSURED

| Last Name | | | | First Name | | Middle Initial |
|---|---|---|---|---|---|---|
| Washington | | | | PATRICIA | | A |

| ☐ Married ☐ Male | Date of Birth | | | Age | | Birthplace TAMPA |
|---|---|---|---|---|---|---|
| ☑ Single ☑ Female | Mo. 7 | Day 7 | Yr. 56 | 38 | State FL | Country USA |

| Driver's License Number | State | Social Security Number | Day Phone Number | Night Phone Number |
|---|---|---|---|---|
| W262 681 56 747 | FL | 247-123-41178 | (813) 844 8322 | (813) 251-3994 |

### 2. RESIDENCE ADDRESS

| No./Street | Apt. No. | City | State/Country | | Zip Code | Yrs. at Address |
|---|---|---|---|---|---|---|
| 1909 | LA SALLE | TAMPA | FL | 33607 | | 10 yrs |

### 3. FORMER ADDRESS (IF LESS THAN 2 YEARS AT CURRENT RESIDENCE ADDRESS)

| No./Street | Apt. No. | City | State/Country | Zip Code | Yrs. at Address |
|---|---|---|---|---|---|
| | | | | | |

### 4. MAILING ADDRESS FOR NOTICES (IF DIFFERENT FROM CURRENT RESIDENCE ADDRESS)

| ☑ Insured | No./Street | Apt. No. | City | State/Country | Zip Code | Yrs. at Address |
|---|---|---|---|---|---|---|
| ☐ Owner | | | | | | |

### SECOND ADDRESS FOR NOTICES

| Name of Person | No./Street | Apt. No. | City | State/Country | Zip Code |
|---|---|---|---|---|---|
| | | | | | |

### 5. EMPLOYER INFORMATION

| Employer's Name | Insured's Occupation (Exact Duties) | How Long? |
|---|---|---|
| Hillsborough Cty School | TEACHER | 18 yrs |

| Employer's Address | | Monthly Earnings |
|---|---|---|
| 1208 Wishing Well Way TPA, FL 33619 | | $3500+ |

### 6. OWNER'S NAME (IF OWNER IS OTHER THAN PROPOSED PRIMARY INSURED - COMPLETE THIS SECTION)

| Last | First | Middle Initial | Relationship to Insured |
|---|---|---|---|
| | | | |

| Owner's SSN | Day Phone Number | Night Phone Number |
|---|---|---|
| -- -- | ( ) | ( ) |

| No./Street | Apt. No. | City | State/Country | Zip Code |
|---|---|---|---|---|
| | | | | |

| If the Individual Owner Dies, who is to own Policy? | Relationship to Insured |
|---|---|
| | |

### 7. LIFE INSURANCE PLAN AND AMOUNT - CHECK APPLICABLE BOX(ES)

**Primary Insured:**
☐ Preferred ☑ Non-Tobacco Use ☐ Tobacco Use
☑ PL-M 25 ☐ PL-10 Yr. ☐ PL-20 Yr. AMT. 5,000
☐ Other _____ AMT. _____

**Primary Rider:**
☑ PL-I 25 ☐ PL-10 Yr. ☐ PL-20 Yr. AMT. 95,000
☐ Other _____ AMT. _____
☐ INCREASING BENEFIT RIDER

**Spouse Rider:**
☐ Preferred ☐ Non-Tobacco Use ☐ Tobacco Use
☐ PL-S 25 ☐ PL-10 Yr. ☐ PL-20 Yr. AMT. _____
☐ Other _____ AMT. _____

**Other Insured Rider(s): Complete PLA-40 S FL for each**
NAME _____ AMT. _____
NAME _____ AMT. _____

☐ Waiver of Premium ☐ Child Rider UNITS _____ ☐ Other _____

### BENEFICIARIES

THE BENEFICIARY FOR ANY SPOUSE, CHILD OR OTHER INSURED RIDERS WILL BE THE INSURED, UNLESS OTHERWISE DESIGNATED UNDER "SPECIAL REQUESTS" ON PAGE 4.

| Beneficiary for Primary Insured | | IF THIS IS AN IRREVOCABLE BENEFICIARY, CHECK HERE ☐ |
|---|---|---|
| Joseph & Bertha Washington | Relationship to Insured PARENTS | SSN _____ |
| Contingent Henry Dawson | Relationship to Insured Fincee | SSN _____ |

### REPLACEMENT

Will any Existing Life Insurance or Annuities be replaced or allowed to lapse, convert, surrender or otherwise terminate? ☑ Yes ☐ No

**If yes, it MUST be shown on Page 4 of the application, "Existing**

| Agent With Application | State Where Sale Occurs | |
|---|---|---|
| 4 3 9 | F L | |

`APP0431226692`

Ed FL REV.

# PRIMERICA LIFE INSURANCE COMPANY

**PRIMARY INSURED WEIGHT, TOBACCO AND INSURANCE INFORMATION**

COMPLETE ALL QUESTIONS, EVEN IF A MEDICAL EXAMINATION IS TO BE COMPLETED. "YOU" REFERS TO THE PRIMARY INSURED.

| | |
|---|---|
| 1. Height: __5__ Ft. __6__ In.  Weight: __200__ Lbs. | Have you used tobacco in any form in the last 3 years?  Yes ☐ No ☐ |
| Have you gained or lost weight during the past 12 months? | Have you used tobacco in any form in the last 12 months?  Yes ☐ No ☐ |
| Yes ☐  No ☑ | Do you now or have you ever owned a Primerica Life policy?  Yes ☐ No ☐ |
| Lbs. gained _____  Lbs. lost _____ | If yes, list policy number(s): _____ |
| Cause _____ | _____ |

**QUESTIONS FOR THE PRIMARY INSURED**

| | | YES | NO | |
|---|---|:---:|:---:|---|
| 2. Military Status  ☐ Active  ☐ Reserve/Guard  ☐ Retired  ☐ DoD Civilian Employee<br>Branch _____  Pay Grade _____ | | | | DETAILS of "Yes" answers. (IDENTIFY QUESTION NUMBER, CIRCLE APPLICABLE ITEMS): Include diagnosis, dates, duration and full names, addresses and telephone numbers of all attending physicians and medical facilities. |
| 3. In the past **10 years** have you been treated for or had any indication of: | | | | |
| a. Chest pain, angina, heart murmur, heart attack, stroke or other disorder of the heart or blood vessels? | | ☐ | ☑ | |
| b. Nervous or mental disorders, epilepsy or paralysis? | | ☐ | ☑ | |
| c. Diabetes or elevated sugar in blood or urine? | | ☐ | ☑ | |
| d. Alcoholism or alcohol abuse? | | ☐ | ☑ | |
| e. Drug dependency or drug use involving any narcotic, depressant, stimulant, hallucinogenic or marijuana? | | ☐ | ☑ | |
| f. Disorder of the skin or lymph glands, unexplained fevers, cyst, tumor or cancer? | | ☐ | ☑ | |
| g. Syphilis, gonorrhea, genital herpes or other venereal diseases? | | ☐ | ☑ | |
| 4. In the past **10 years** have you been diagnosed for Acquired Immune Deficiency Syndrome (AIDS) or any immune deficiency related disorder? | | ☐ | ☑ | |
| 5. In the past **10 years** have you tested positive for Human Immunodeficiency Virus (HIV)? | | ☐ | ☑ | |
| 6. Have you ever been convicted of any felonies?<br>If yes, describe in detail and give conviction date(s). | | ☐ | ☑ | |
| 7. In the past **5 years** have you been treated for or had any indication of: | | | | |
| a. High blood pressure, anemia or disorder of the blood? | | ☐ | ☑ | |
| b. Ulcer or disorder of stomach, intestines, liver or pancreas? | | ☐ | ☑ | |
| c. Disorder of kidney, bladder, prostate or reproductive organs? | | ☐ | ☑ | |
| d. Asthma, bronchitis, emphysema, tuberculosis or any other disorder of the lungs or respiratory system? | | ☐ | ☑ | |
| e. Arthritis or disorder of the muscles or bones, including the back, spine or joints? | | ☐ | ☑ | |
| 8. Are you now: | | | | |
| a. Under observation or receiving treatment for any mental, physical or nervous condition? | | ☐ | ☑ | |
| b. Currently temporarily or permanently disabled? | | ☐ | ☑ | |
| 9. In the past **3 years**, other than as answered above, have you: | | | | |
| a. Had any checkup or examination, or been a patient in a hospital, clinic or sanitarium? | | ☐ | ☑ | |
| b. Had any electrocardiogram, x-ray or diagnostic test? | | ☐ | ☑ | |
| c. Been advised to have any diagnostic test, hospitalization or surgery which has not yet been done? | | ☐ | ☑ | |
| 10. In the past **3 years** have you: | | | | |
| a. Been postponed, rated or declined for life, health, accident or sickness insurance? | | ☐ | ☑ | |
| b. Flown as a pilot, student pilot or crew member on any aircraft or do you plan on doing so?<br>If yes, the Aviation Questionnaire must be completed. | | ☐ | ☑ | |
| c. Engaged or do you intend to engage in any hazardous sports, such as: skin or scuba diving; mountain climbing; hang gliding; parachuting; auto, motorcycle, snowmobile or boat racing?<br>If yes, the Hazardous Sports Questionnaire must be completed. | | ☐ | ☑ | |
| d. Operated or been a passenger on a motorcycle, or do you intend to do so? | | ☐ | ☑ | |
| e. Been cited for a DUI or 2 or more other moving violations of any motor vehicle law? If yes, list details. | | ☐ | ☑ | |
| f. Had your license suspended or revoked, or is your license currently suspended or revoked?<br>If yes, list details. | | ☐ | ☑ | |
| 11. Has either Parent died prior to age 65 due to cancer or heart disease?<br>If yes, list name, disease and age at death. | | ☐ | ☑ | |

# AMERICA LIFE INSURANCE COMPANY - PART 2

Primary Insured _PAULA WASHINGTON_

COMPLETE PART-2 ONLY IF SPOUSE AND/OR CHILD(REN) ARE PROPOSED FOR INSURANCE UNDER SUPPLEMENTAL RIDER OR BENEFITS

## SPOUSE INFORMATION (LIST ANY EXISTING COVERAGE IN FORCE FOR SPOUSE OR CHILD ON PAGE 4 OF APPLICATION.)

| Last Name | First Name | Middle Initial |
|---|---|---|

| ☐ Married | ☐ Male | Date of Birth | | | Age | Birthplace | |
|---|---|---|---|---|---|---|---|
| ☐ Single | ☐ Female | Mo. | Day | Yr. | | State | Country |

| Driver's License Number | State | Social Security Number | Day Phone Number | Night Phone Number |
|---|---|---|---|---|
| | | __ __ -- __ __ -- | ( ) | ( ) |

### I. SPOUSE'S ADDRESS (IF DIFFERENT FROM PROPOSED PRIMARY INSURED)

| No./Street | Apt. No. | City | State/Country | Zip Code | Years at Address |
|---|---|---|---|---|---|

### II. EMPLOYER INFORMATION

| Employer's Name | Spouse's Occupation (Exact Duties) | How Long? |
|---|---|---|

| Employer's Address | Monthly Earnings $ |
|---|---|

### SPOUSE WEIGHT, TOBACCO AND INSURANCE INFORMATION
COMPLETE ALL QUESTIONS, EVEN IF A MEDICAL EXAMINATION IS TO BE COMPLETED. "YOU" REFERS TO THE SPOUSE.

1. Height: _____ Ft. _____ In.    Weight: _____ Lbs.

Have you gained or lost weight during the past 12 months?

Yes ☐        No ☐

Lbs. gained _____        Lbs. lost _____

Cause _____

Have you used tobacco in any form in the last 3 years?    Yes ☐  No ☐
Have you used tobacco in any form in the last 12 months?   Yes ☐  No ☐
Do you now or have you ever owned a Primerica Life policy?  Yes ☐  No ☐
If yes, list policy number(s): _____

### CHILD RIDER INFORMATION

| Full Names of Children Proposed for Insurance | Resides w/Primary (Yes/No) | Sex | Relationship (Son, Daughter, stepchild, etc.) | Date of Birth Mo. / Day / Yr. | Age | Height Ft. In | Weight Lbs. | Social Security Number |
|---|---|---|---|---|---|---|---|---|
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |

### QUESTIONS FOR THE SPOUSE AND EACH CHILD NAMED ABOVE ("YOU" REFERS TO THE SPOUSE AND EACH CHILD)

2. Military Status  ☐ Active   ☐ Reserve/Guard   ☐ Retired   ☐ DoD Civilian Employee
   Branch _____   Pay Grade _____

| | Yes | No | |
|---|---|---|---|
| 3. In the past 10 years have you been treated for or had any indication of: | | | DETAILS of "Yes" answers. (SPECIFY PERSON AND QUESTION NUMBER, CIRCLE APPLICABLE ITEMS): Include diagnosis, dates, duration and full names, addresses and telephone numbers of all attending physicians and medical facilities. |
| a. Chest pain, angina, heart murmur, heart attack, stroke or other disorder of the heart or blood vessels? | ☐ | ☐ | |
| b. Nervous or mental disorders, epilepsy or paralysis? | ☐ | ☐ | |
| c. Diabetes or elevated sugar in blood or urine? | ☐ | ☐ | |
| d. Alcoholism or alcohol abuse? | ☐ | ☐ | |
| e. Drug dependency or drug use involving any narcotic, depressant, stimulant, hallucinogenic or marijuana? | ☐ | ☐ | |
| f. Disorder of the skin or lymph glands, unexplained fevers, cyst, tumor or cancer? | ☐ | ☐ | |
| g. Syphilis, gonorrhea, genital herpes or other venereal diseases? | ☐ | ☐ | |
| 4. In the past 10 years have you been diagnosed for Acquired Immune Deficiency Syndrome (AIDS) or any immune deficiency related disorder? | ☐ | ☐ | |
| 5. In the past 10 years have you tested positive for Human Immunodeficiency Virus (HIV)? | ☐ | ☐ | |
| Have you ever been convicted of any felonies? If yes, describe in detail and give conviction date(s). | ☐ | ☐ | |
| In the past 5 years have you been treated for or had any indication of: | | | |
| a. High blood pressure, anemia or disorder of the blood? | ☐ | ☐ | |
| b. Ulcer or disorder of stomach, intestines, liver or pancreas? | ☐ | ☐ | |
| c. Disorder of kidney, bladder, prostate or reproductive organs? | ☐ | ☐ | |

# PRIMERICA LIFE INSURANCE COMPANY - PART 2

| 7. Continued | Yes | No |
|---|---|---|
| d. Asthma, bronchitis, emphysema, tuberculosis or any other disorder of the lungs or respiratory system? | ☐ | ☐ |
| e. Arthritis or disorder of the muscles or bones, including back, spine, joints? | ☐ | ☐ |

**DETAILS of "Yes" answers. (SPECIFY PERSON AND QUESTION NUMBER, CIRCLE APPLICABLE ITEMS):** Include diagnosis, dates, duration and full names, addresses and telephone numbers of all attending physicians and medical facilities.

| 8. Are you now: | Yes | No |
|---|---|---|
| a. Under observation or receiving treatment for any mental, physical or nervous condition? | ☐ | ☐ |
| b. Currently temporarily or permanently disabled? | ☐ | ☐ |

| 9. In the past **3 years**, other than as answered above, have you: | Yes | No |
|---|---|---|
| a. Had any checkup or examination, or been a patient in a hospital, clinic or sanitarium? | ☐ | ☐ |
| b. Had any electrocardiogram, x-ray or diagnostic test? | ☐ | ☐ |
| c. Been advised to have any diagnostic test, hospitalization, or surgery which has not yet been done? | ☐ | ☐ |

| 10. In the past **3 years**, have you: | Yes | No |
|---|---|---|
| a. Been postponed, rated or declined for life, health, accident or sickness insurance? | ☐ | ☐ |
| b. Flown as a pilot, student pilot or crew member or on any aircraft or do you plan on doing so? If yes, the Aviation Questionnaire must be completed. | ☐ | ☐ |
| c. Engaged or do you intend to engage in any hazardous sports, such as: skin or scuba diving; mountain climbing; hang gliding; parachuting; auto, motorcycle, snowmobile or boat racing? If yes, the Hazardous Sports Questionnaire must be completed. | ☐ | ☐ |
| d. Operated or been a passenger on a motorcycle, or do you intend to do so? | ☐ | ☐ |
| e. Been cited for a DUI or 2 or more other moving violations of any motor vehicle law? If yes, list details, specify person, and if child, driver's license number. | ☐ | ☐ |
| f. Had your license suspended or revoked, or is your license currently suspended or revoked? If yes, list details, specify person, and if child, driver's license number. | ☐ | ☐ |

| 11. Has either Parent of the Spouse died prior to age 65 due to cancer or heart disease? If yes, list name, the disease, and age at death. | ☐ | ☐ |

## EXISTING INSURANCE

**Does the Proposed Primary Insured or Proposed Spouse, Children or any Other Proposed Insured have any Existing Life Insurance or Annuities?** ☑ Yes ☐ No  If yes, "Existing Insurance" section below must be completed in full.

LIST BELOW DETAILS OF ALL LIFE INSURANCE OR ANNUITES IN FORCE ON THE PROPOSED PRIMARY INSURED AND (IF TO BE COVERED), SPOUSE, CHILDREN AND OTHER PROPOSED INSURED PERSON - IF NONE, SAY "NONE"

| Full Name and Location of Company | Person - Indicate as Primary, Spouse, or Name of Child or Other Insured | Policy Number | Amount | Year Issued | Replace ment |
|---|---|---|---|---|---|
| Commonwealth, Louisville Kentucky | Patricia Washington | YL 7131623 | 63,327 | 2/93 | Yes ☑ |
| | | | | | ☐ |
| | | | | | ☐ |
| | | | | | ☐ |
| | | | | | ☐ |
| | | | | | ☐ |

## SPECIAL REQUESTS AND ADDITIONAL COMMENTS BY AGENT(S)

**PLA-40 FL REV.**   Page 4

# PRIMERICA LIFE INSURANCE COMPANY APPLICATION AGREEMENT

ch signer of this application hereby declares that the foregoing statements and answers, as well as any made in continuation hereof, are true d complete to the best of my/our knowledge and belief. It is also agreed as follows: (1) that all of said statements and answers, including those any continuation hereof, shall be part of the application and shall form the basis of any contract of insurance that may be issued; (2) except provided in the "Conditional Premium Receipt," the insurance hereunder applied for shall not take effect unless the first full premium is paid d the policy is issued and delivered to the Owner while the health, habits and occupation of the Proposed Insured remain as described in this plication; (3) that if the Company should issue a Policy different from that applied for, the Company is hereby authorized to amend this plication; such amendment shall be in writing and signed by the Proposed Insured and Owner (if other than the Proposed Insured); and any ch amendment must be received by the Company before the Policy can become effective; and (4) no agent of the Company nor any broker is thorized to make or modify contracts or waive any of the Company's rights or requirements. It is further understood and agreed that: (1) uance of any Policy pursuant to this application and any application supplements is made in consideration of payment of the proper premium nount for the correct premium class of each person insured; (2) our determination of the premium class relies on true and complete answers the questions in this application and any application supplements, including SPECIFICALLY any questions regarding tobacco use; and (3) if hin 2 years of the Policy Date should said answers be determined to be materially misstated, the Policy is subject to be rendered void in cordance with applicable law. I/We hereby acknowledge that I/We have read and I/We understand the terms of this Application Agreement, as idenced by my/our signature below. ANY PERSON WHO KNOWINGLY AND WITH INTENT TO INJURE, DEFRAUD, OR DECEIVE ANY SURER FILES A STATEMENT OF CLAIM OR AN APPLICATION CONTAINING ANY FALSE, INCOMPLETE, OR MISLEADING FORMATION IS GUILTY OF A FELONY OF THE THIRD DEGREE.

## CONDITIONAL PREMIUM RECEIPT

**CONDITIONAL PREMIUM RECEIPT** - I/We understand and agree that no insurance will be in effect before a Policy is issued and delivered less all of the Conditions below are met. If all Conditions are met and my/our death occ all be coverage, but only in accordance with the provisions of this Receipt and any Polic

**CONDITIONS FOR COVERAGE** - 1) All information given by me/us in the application must b d belief; 2) The Company must find the person(s) to be insured to be (a) standard risk(s) underwriting rules; 3) All items requested by the Company concerning my/our insurability m ay include, but are not limited to, medical examinations, blood and/or urine stud ectrocardiograms (EKG); 4) At least one month's premium for the Policy applied for must be paid with the application, but not to exceed the nount of premium required for $500,000 of coverage.

SIG0431226692

**FFECTIVE DATE OF COVERAGE** - Any coverage under this Receipt will become effective on the latest of the following: 1) Application Date Receipt of results of all test and exams required by the Company in connection with the Application; 3) Date the Company receives all othe formation requested.

**MITS OF COVERAGE** - The amount applied for and for which premium has been paid, but not to exceed $500,000 for all coverage applied r under this Application.

We hereby acknowledge that I/We have read and I/We understand the conditional coverage under this receipt and as evidenced by y/our signature below, understand these conditions cannot be changed by any agent of the Company.

ated at **TAMPA, FL 336** this **30** day of **April 30** 19 **96**
City, State and Zip Code

APPLICATION AGREEMENT/CONDITIONAL PREMIUM RECEIPT

x _Patricia A W_____
Name of Minor Child | Signature of Proposed Primary Insured or Parent of Minor Child

_____ X _____
Signature of Owner if other than Proposed Primary Insured | Signature of Spouse (if to be Insured)

## UNDERWRITING AUTHORIZATION TO OBTAIN AND DISCLOSE INFORMATION TO PRIMERICA LIFE INSURANCE COMPANY

Executive Offices: 3120 Breckinridge Boulevard, Duluth, Georgia 30199-0001

hereby authorize any licensed physician, medical practitioner, hospital, clinic or other medically related facility, Veteran's Administration, overnment facility, insurance company, the Medical Information Bureau or other organization, institution or person having any records or nowledge about me to provide to Primerica Life Insurance Company and its reinsurers any such medical or personal information, and s to such information, all to the extent permitted by law. As part of the Company's regular underwriting procedure, an investigative port may be obtained which will contain personal information concerning an individual's character, habits, general reputation, personal aracteristics and mode of living, except as may be related directly or indirectly to your sexual orientation. This information may be obtained rough personal interviews with my neighbors, friends, associates and acquaintances. Medical information includes the diagnosis and rognosis with respect to any physical or mental condition, as well as the use of drugs or alcohol. Although the Company may release information obtained, the Company may, in certain circumstances be required by a law enforcement or governmental agency to release formation to others without my prior authorization. However no specific information pertaining to Human Immunodeficiency Virus or Acquired mmune Deficiency Syndrome (AIDS) will be disclosed to anyone outside the company or its employees, insurance affiliates or reinsurers xcept to a physician designated by the applicant, in writing, or in the absence of such designation to the Florida Department of Insurance. In the vent that a report is obtained, I understand that I may request to be interviewed in connection with the preparation of the report and, upon quest to the Company at the address listed above, further detailed information on the nature and scope of the report will be provided. I nderstand that the information obtained by use of this Authorization will be to determine eligibility for insurance. I understand that a oresentative may request to receive a copy of this Authorization. A photographic copy of this Authorization shall be as valid as the original and ll be valid for two and one half (2-1/2) years from the date this application was signed.

gned this **30** day of **April** 19 **96** _____
Name of Minor Child

_Patricia A W_____ X _____
Signature of the Proposed Primary Insured or Parent of Minor Child | Signature of Spouse (if to be Insured)

**atricia A. Washington**
Print Name of Proposed Primary Insured or Parent of Minor Child | Print Name of Spouse (if to be Insured)

LA-40 FL REV. | Page 5

# PRIMERICA LIFE INSURANCE COMPANY

## AGENT CERTIFICATION

I certify that: (1) I personally have asked and recorded completely and accurately the answers to all questions on this application; (2) To the best of my knowledge and belief all answers provided by the Proposed Primary Insured/Spouse on all completed parts are true; (3) I know of nothing affecting the risk that has not been recorded herein; and (4) I have read and explained to the applicant(s) the provisions of any Conditional Premium Receipt I have given for any premium submitted with this application. I have not made any proposal to or agreement with anyone whereby the applicant or any other person has received directly or indirectly, in settlement of the premium on the proposed insurance, any concession or rebate from the regular premium, and I assume full responsibility for the delivery of any Policy issued and for the delivery of payment of the first premium to the Company.

**I CERTIFY THAT I PERSONALLY SAW: THE PROPOSED PRIMARY INSURED AND, IF ANY, PROPOSED SPOUSE AND OTHER PROPOSED INSURED PERSON AND WITNESSED THEM SIGNING THE APPLICATION.  ☑ YES ☐ NO**
Any qualifying details may be provided in the Additional Comments By Agent (s) section on Page 4.

Do you have knowledge or reason to believe that replacement of existing insurance on the Proposed Primary Insured or any Other Proposed Insured Person will occur? ☑ Yes ☐ No  If yes, check this box ☑ to indicate all necessary replacement requirements have been followed. If you used a Personalized Insurance Analysis or other written or printed sales proposals, are they attached? ☐ Yes ☑ Not Applicable

| | |
|---|---|
| RVP Name (Please print): Brenda Holley | Agent Code No.: A M U 9 8 |
| Street Address: 8019 N. Himes Ave | Suite: 101 |
| City: Tampa   State: FL   Zip: 33610 | |
| Telephone No. ( 813 ) 915 - 0611 | |

x Signature of 1st Licensed Agent: _Brenda Hardy_

1st Licensed Agent Name (Last Name, First Initial): H A R D Y   D      Agent Code No.: F A J 1 8

x Florida Agent License I.D. No. (Print): 264 571938

x Signature of 2nd Licensed Agent: _____

2nd Licensed Agent Name (Last Name, First Initial): _____   Agent Code No.: _____

x Florida Agent License I.D. No. (Print): _____

## ADDITIONAL OPTIONS

| ☐ APDA | Single Payment $ | At Issue Mode Contribution $ | 13-Month Mode Contribution $ |
|---|---|---|---|

## MODE OF BILLING

| ☐ Annual   ☐ Semi Annual | ☑ Monthly PAC Draft Date (1st-28th) 18 | ☐ Monthly Govt. Allot.   Branch |
|---|---|---|
| ☐ Quarterly | (Authorization below MUST be completed.) | ☐ Active ☐ Retired   Pay Grade |

### AUTHORIZATION TO HONOR FUNDS TRANSFERS DIRECTED BY PRIMERICA LIFE INSURANCE COMPANY

Patricia A. Washington
813-251-3094
1909 Lasalle Street
Tampa, FL 93607                                    3512

                                                            83-469/831
                                                                13
_____ 19____

PAY TO THE
ORDER OF _____          VOID          $ _____

_____ DOLLARS

Barnett Bank
4823 West John F. Kennedy Blvd.
Tampa, Florida 33609

040-013

FOR _____          _____ MP

⑈063104697⑈ 3512 271282715⑉

You are hereby authorized, as a convenience to me, to pay and charge to my checking account indicated by the attached check any transfer of funds (whether by automatic debit entry, the drawing of a check or any other means permitted by law) directed by and payable to the order of Primerica Life Insurance Company for the payment of premiums, provided there are sufficient collected funds in such account to pay the amount on the scheduled transfer date. I agree that your rights in respect to each such transfer shall be the same as if it were a check or other instrument drawn on you and signed personally by me. This authority is to remain in effect until revoked by me in writing and until you actually receive the notice and have a reasonable opportunity to act on it. I agree that you shall be fully protected in making any such transfer of funds. I further agree that, if any such transfer of funds be rejected or dishonored, whether with or without cause and whether intentionally or inadvertently, you will be under no liability whatsoever, even though such rejection or dishonor results in the forfeiture of insurance.

x Authorized Signature of Depositor: _Patricia A. Washington_      Date: 4/30/96

PLA-40 FL REV.                          Page 6                           *SIG*

United States District Court
Northern District of Georgia
2211 United States Courthouse
75 Ted Turner Drive, SW
Atlanta, GA 30303

Kevin P. Weimer,                                        Administrative Section
Clerk of Court/DCE                                        (404) 215-1600

July 25, 2023

Name:     Angela Washington Debose
Address:  1107 West Kirby Street, Tampa FL
          33604

The documents you provided to the Court are being returned to you for the following reason(s):

✓     The filing fee or the Application to Proceed in District Court Without Prepaying Fees or
      Costs (Non-prisoner cases) was not included with the document.

      A civil cover sheet (JS-44) was not included with the document.

Please resubmit your documents(s) with the filing fee or the Application to Proceed in District
Court Without Prepaying Fees or Costs (Non-prisoner cases), and/or the civil cover sheet. **You
also must include a copy of this letter with your resubmission.**

For your convenience, a copy of the below is being provided to you:

✓     Application to Proceed in District Court Without Prepaying Fees or Costs (Non-prisoner
      cases).

      A civil cover sheet (JS-44).

Additional copies are available at the public filing counter or on the Court's website,
www.gand.uscourts.gov/commonly-used-forms.

**If you are submitting the filing fee, acceptable forms of payment include the following:**
Domestic money orders, bank cashier's checks, credit / debit cards (MasterCard, VISA,
American Express and Discover), and cash are acceptable forms of payment. Credit cards are
only accepted for payment of filing fees or fees paid through electronic filing. Personal and / or
business checks will be accepted only from attorneys who are current members of the bar of this
Court in good standing.

                         s/ R. Bachelor
                         ─────────────────────
                            Administrative Deputy